JOHN L. KEOUGH *vs.* AMELIO CEFALO & another.

Suffolk. November 5, 1952. — March 6, 1953.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Negligence,* Toward seaman, Fishing vessel. *Seaman. Admiralty. Contract,* Of employment.

Under the governing Federal law a finding of negligence on the part of the captain toward a seaman of a trawler towing a heavy net and fishing doors in a rough sea was warranted by evidence of the circumstances in which the seaman, upon being ordered by the captain to free towing wires caught on an obstruction at the stern of the vessel and under a "terrific strain," was injured when the movement of the freed wires caused a bar used by him in freeing them to strike him. [60–61]

It was error to order a verdict for the defendant in an action by a seaman against the owner of a trawler, for maintenance and cure under the general maritime law where there was evidence that the seaman was injured while at work at sea on the trawler and that he incurred medical expense from the injury. [62]

TORT AND CONTRACT. Writ in the Superior Court dated September 29, 1948.

The action was tried before *Baker,* J.

In this court the case was argued in November, 1952, before *Qua*, C.J., *Lummus*, *Spalding*, *Williams*, & *Counihan*, JJ., and afterwards was submitted on briefs to all the Justices.

*Harry Kisloff*, for the plaintiff.

*Joseph F. Dolan*, for the defendants.

COUNIHAN, J.   This action is in two counts, one for personal injuries sustained by the plaintiff, a fisherman, aboard a vessel at sea, and the second for expenses for cure and maintenance.   Recovery is sought on the first count under the Jones act, U. S. C. (1946 ed.) Title 46, § 688, and general maritime law; and on the second count for cure and maintenance under general maritime law.

The action is here upon exceptions of the plaintiff to the allowance of a motion for a directed verdict for the defendants on each count, and to the exclusion of evidence offered by the plaintiff.

Because of what shall hereinafter appear we are of opinion that the plaintiff's exceptions must be sustained in certain respects at least.

The following is a summary of the pertinent evidence. The defendants were copartners operating under the name of the North Atlantic Fish Company.   On February 1, 1947, they owned and controlled a fishing vessel of the trawler type known as the Ohio.   The plaintiff was a member of the crew of the Ohio and on that day he was injured while at work at sea.   The trawler was "90 feet long, 23 feet wide, 12 feet deep, approximately 160 gross tons and had a 260 horsepower Diesel engine."   A trawler is a type of vessel used in catching fish by towing a net.   It carried a crew of fifteen men, including a captain, a mate, two engineers, a cook, and ten deck hands of whom the plaintiff was one.   At the time of the accident it was fishing "with standard fishing gear" which consisted of a net, with fishing doors which "weighed approximately 1,000 pounds."   The net and fishing doors were attached to wires which led at an angle to a winch on the stern deck of the vessel.   It was fishing in water about 40 fathoms deep and the length of the wires

was about 120 fathoms. The plaintiff was on watch under the supervision of the captain. The "weather was rough and there was quite a swell." The net had been in tow for about one half an hour and the vessel "was proceeding at about three knots." The "net was being towed . . . from the port side of the vessel." The approximate weight of the gear which was out at the time of the accident was between 3,000 and 4,000 pounds.

The plaintiff noticed that the wires attached to the net had come in over the stern of the vessel and "were caught on the lead block on the stern of the vessel." He reported this to the captain who told him "to free them." To attempt to do this the plaintiff got a "kick out bar" which was about four feet long. He put this bar under the wires, "rested on his arm and his knee and he heaved and as he did so the wires went out over the edge [of the vessel] and hit the end of the bar and the bar came up and hit him in the corner of the eye and knocked him out." Following "the blow he was knocked out on deck for four or five minutes" and when he came to the captain was helping him. He was bleeding badly from his right eye and suffered other ill effects from the accident. The captain bathed his eye and he lost one watch from work. There "was no slackening of the speed [of the vessel] at any time after the wires had caught until the accident happened." The "effect of steaming upon the wires that are out is to put a terrific strain on them . . . there is the weight of the boat plus the engine, plus the net, and . . . the boat steaming brings terrific strain on the main wires."

The plaintiff was examined by a physician and incurred medical expenses of $60.

We first consider the propriety of directing a verdict for the defendants on the first count. As we have said, this count was for personal injuries and was brought under the Jones act and general maritime law. The Jones act incorporates by reference the Federal employers' liability act. U. S. C. (1946 ed.) Title 45, § 51. *The Arizona* v. *Anelich*, 298 U. S. 110, 118–119.

State and Federal courts have concurrent jurisdiction in actions to recover under the Jones act and general maritime law, but Federal principles of law apply. The applicable Federal rule was recently affirmed in *Ellis* v. *Union Pacific Railroad,* 329 U. S. 649, where at page 653 it was said, "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury. . . . Whether those standards are satisfied is a federal question, the rights created being federal rights."

This rule was recognized not long ago by our court in *Murphy* v. *Boston & Maine Railroad,* 319 Mass. 413. A list of decisive Federal cases is cited. To them may be added the later case of *Wilkerson* v. *McCarthy,* 336 U. S. 53 (arising in a Utah State court), and see *Jesionowski* v. *Boston & Maine Railroad,* 329 U. S. 452 (arising in the Federal District Court in Boston).

In the *Wilkerson* case at page 61 it was said, "But the issue of negligence is one for *juries to determine* [emphasis supplied] according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances,' bearing in mind that 'the standard of care must be commensurate to the dangers of the business.'"

Under Federal rule we are of opinion that the question of negligence on the first count should have been for the jury.

At the outset it should be recognized that seamen stand in a different position from other employees. Their duty is to obey orders. The plaintiff here had no choice. He was required to attempt to free the wires. He could not refuse to act as the captain directed and was subject to disciplinary action if he did so. *Panama Railroad* v. *Johnson,* 289 Fed. 964, 979–980 (C. C. A. 2), affirmed 264 U. S. 375. *United States Shipping Board Emergency Fleet Corp.* v. *O'Shea,*

5 Fed. (2d) 123, 125 (C. A. D. C.). *Socony-Vacuum Oil Co. Inc.* v. *Aderhold,* 150 Texas, 292, 301. See *Blair* v. *Baltimore & Ohio Railroad,* 323 U. S. 600, 605–606.

In view of the evidence as to the weight of the wires and gear which were being towed at a speed of three knots when "the weather was rough and there was quite a swell," the jury could reasonably find confirmation of the evidence that all this "put a terrific strain" on the wires which were caught and which the plaintiff was ordered to release. It would be a reasonable inference for the jury to conclude that in such circumstances the captain should have anticipated the danger involved, and that a reasonable and prudent captain would have first stopped or slowed down the vessel to lessen the strain on the wires, so that the work could have been done safely. These facts together with the rolling and pitching of the vessel in a rough sea would warrant the jury finding negligence in that the captain should have realized that the nature of the work he ordered the plaintiff to do presented hazards that would entail danger to the plaintiff.

"The nature of the task which . . . [the plaintiff] undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand . . . all these were facts and circumstances for the jury to weigh and appraise in determining whether . . . [the defendant] . . . was negligent. The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue . . . . To withdraw such a question from the jury is to usurp its functions." *Bailey* v. *Central Vermont Railway, Inc.* 319 U. S. 350, 353–354. *Stone* v. *New York, Chicago & St. Louis Railroad,* 344 U. S. 407. The principles embodied in this statement are applicable to the facts in the case at bar and require that the question of the defendants' negligence should have been submitted to the jury.

The "inferences to be drawn from uncontroverted as

well as controverted facts, are questions for the jury."
*Ellis* v. *Union Pacific Railroad,* 329 U. S. 649, 653.

It may be worth while to point out that under the Jones
act, if there is negligence of the defendant, contributory
negligence of the plaintiff is not a defence, but if it exists
it is to be considered by the jury only by way of mitigation
of damages, in the proportion the plaintiff's negligence
bears to the negligence of the defendant. U. S. C. (1946 ed.)
Title 45, § 53. *Ellis* v. *Union Pacific Railroad,* 329 U. S.
649, 652–653.

We are likewise of opinion that the second count should
have been submitted to the jury. In fact the defendants
conceded in their brief that the plaintiff was entitled to
recover on this count for at least the $60 which he expended
for medical bills. The plaintiff's right to recover for mainte-
nance and cure under general maritime law does not depend
upon negligence or culpability on the part of the owner or
master of the vessel, but arises from the contract of em-
ployment, and the care may be extended beyond the end
of the voyage. *Calmar Steamship Corp.* v. *Taylor,* 303
U. S. 525, 527–529. There was ample evidence from the
plaintiff himself of the injury he received, and there was
evidence of expense in seeking a cure. What expenses he
had incurred in the past for nursing, care, and medical advice
and what he might incur in the future were questions for
the jury to determine.

Because of what we have said a new trial must be had.
We therefore need not consider other exceptions, if any, of
the plaintiff since the same questions are not likely to arise
in the same form at another trial.

*Exceptions sustained.*