ARTHUR A. LANGWAY *vs.* TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Worcester.   September 27, 1954. — February 8, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence*, Employer's liability: railroad yard; Federal employers' liability act; Railroad: yard.

Findings of negligence on the part of a railroad contributing to injuries received by one employed by the railroad in interstate commerce as a conductor in charge of switching operations in the railroad's yard, and of liability of the railroad to the conductor under the Federal employers' liability act, were warranted by evidence respecting defects in the rails and roadbed of two of the tracks in the yard narrowing the clearance between cars on them and by evidence of the circumstances in which the conductor, while standing on the step of a freight car in a train on one of such tracks moving past cars on the other track, was struck by a corner or a door of a car on the adjacent track, fell into the area between the two tracks and was struck by the step of another car of the moving train as he was starting to get up.

TORT.   Writ in the Superior Court dated May 22, 1947. The action was tried before *Cahill*, J.

*Noel W. Deering*, for the defendants.

*Thomas S. Carey*, for the plaintiff.

COUNIHAN, J. This is an action of tort for personal injuries sustained by the plaintiff on February 27, 1946, while in the employ of the defendants. The declaration was in two counts, but the first count which set forth a cause of action at common law was waived at the trial. The second count was based upon the Federal employers' liability act. U. S. C. (1940 ed.) Title 45, §§ 51, 53, and 54. It was agreed at the pre-trial hearing that the plaintiff sustained an injury arising out of his employment, and at the trial it was agreed that the plaintiff was engaged in interstate commerce at the time of the accident. These agreements bring this action within the scope of the Federal employers' liability act. The action was tried to a jury who returned a verdict for the plaintiff. It comes here upon the exception of the defendants to the denial of their motion for a directed verdict. There was no error.

We summarize the evidence most favorable to the plaintiff. At the time of the accident the plaintiff was a yard conductor in charge of an engine and crew engaged in switching operations in yard 1 of the Worcester yard of the defendants. Prior to this time he had been in the employ of the railroad in similar work for more than twenty-four years. On the day of the injury it was hailing, snowing, and sleeting. He was engaged in making up freight trains, setting cars for sidings, and classifying cars for the trains. Cars which were to make up the freight train were assembled on track 17 and others were put on track 15. These tracks ran parallel and adjacent to each other in a northerly and southerly direction. During the switching operations he had to walk between cars on tracks 15 and 17. He was unable to walk between the cars facing forward but he had to walk sidewise and squeeze his way through. Each car was forty feet long. When he had the cars he wanted lined up on track 17 he gave his engineer a signal to move them. The front end of an engine was coupled to the front end of the first car of the train on track 17 and the engine backed out

in a southerly direction. As the train started to move the plaintiff got on a step at the easterly forward end of the fourth car from the rear of the train. He stood with both feet on this step and held on to a handle on the easterly side of the car with both hands. This step was made of steel and hung down about eighteen inches below the bottom of the car. It was about twelve inches wide. When the train started he was looking in a southerly direction toward the engine but the snow and hail struck his face so that he turned his head the other way. After he had ridden in this manner for about two hundred feet he felt a blow on his back which broke his hold and he fell into the area between the tracks. He appeared to have been struck by the corner or the door of a car on track 15. As he started to get up he was hit on his left side by the step of the last car on track 17. The train continued for a distance of six hundred feet before it came to a stop. When the plaintiff first began to work in this yard in 1922 the distance between the easterly rail of track 17 and the westerly rail of track 15 was six feet. On the day of the accident that distance was five feet four inches. In 1922 the rails of these tracks were straight, level, and evenly spaced. The ties and ballast were in good condition. When the accident occurred the ties rested on top of the ground and there was no ballast. Some of the ties were broken and cracked so that the rails were not in alignment and one rail was higher than the other. The plaintiff testified that "as we got out there, with the trains, we'd be hanging on, and the cars would sway from one side to the other, in other words, rocky." The condition with respect to the rails and roadbed as it was at the time of the accident had existed for three or four years prior thereto. The plaintiff had reported these conditions to an assistant superintendent of the railroad but no repairs were made. At the time of the accident the clearance between a box car on track 15 and one on track 17 was eight to ten inches. In 1922 this clearance was eighteen to twenty inches.

The plaintiff admitted that he was familiar with certain rules of the railroad which were in effect when the accident

happened and that he had instructed those under him about them.[1]

In these circumstances the defendants assert: (1) There was no negligence on the part of the defendants. (2) There was no negligence on the part of the defendants which was the proximate cause of the accident. (3) The sole proximate cause of the accident was the plaintiff's own negligence and violation of well known rules of the defendants, which it was his duty as a conductor in charge of switching operations to enforce and himself to obey.

At the outset we think we ought to direct attention to certain provisions of the Federal act which appear to be applicable to the facts in the case at bar. Section 51 reads in part, "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any . . . employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars . . . track, roadbed . . . ." Section 53 provides that contributory negligence shall not bar recovery but shall apply only to diminution of damages. Section 54 provides that no employee shall be held to have assumed the risks of his employment in any case where an injury resulted in whole or in part from the neglect of any of the employees of such carrier.

We have had occasion to consider the effect of this Fed-

---

[1] Rule S60: "Men employed in train, yard and engine service must be familiar with surroundings and inform themselves as to the location of openings, structures and obstructions where clearances are close."

Rule S61: "When engaged in the switching of cars or in the removal of trains, employees must be careful to avoid injury to themselves and others and each employee must look after and be responsible for his own safety."

Rule S63: "Employees must not board or alight from cars or engines or cross tracks until they are certain there are no cars or engines approaching, or openings or obstructions liable to cause injury."

Rule S64: "Employees must not lean beyond the line of cab or car without exercising care to avoid being struck at points where clearances are close."

Rule S66: "Sight and hearing are important senses where equipment is handled. Therefore, never stop looking and never cover your ears while working around cars or tracks where movements are being made."

eral act in *Murphy* v. *Boston & Maine Railroad,* 319 Mass. 413, and at page 417 this court said with ample citation of Federal authority, "The standard by which is measured the amount of evidence necessary to carry a case to the jury under the Federal act is, of course, that established by decisions of the Supreme Court of the United States. . . . Recent decisions of that court have, in general, disclosed a tendency toward scrupulous avoidance of any possible encroachment upon the sphere of the jury." This principle was considered again and affirmed in *Keough* v. *Cefalo,* 330 Mass. 57, with further citation of Federal authority.

The defendants contend, however, that as matter of law the conduct of the plaintiff was the sole proximate cause of his injuries because of his knowledge of the dangerous condition of the tracks and because of his failure to obey certain rules of his employer. We recognize that this contention might be sustained if there were no evidence at all of negligence on the part of the defendants. Indeed this appears to be the situation in the many Federal cases relied upon by the defendants.

Here, however, there was ample evidence of negligence of the agents of the defendants particularly by reason of defects or insufficiency in its tracks or roadbed which contributed in whole or in part to the injuries of the plaintiff. Applying the doctrine of the *Murphy* and *Keough* cases we are of opinion that this case was properly submitted to the jury. To hold otherwise would require the application of the doctrine of contributory negligence or of assumption of the risk, both of which are barred by the Federal act.

*Exceptions overruled.*