James **CLOSE**

v.

**CALMAR STEAMSHIP CORP.**

**CALMAR STEAMSHIP CORP.**

v.

**JARKA CORP. OF PHILADELPHIA.**

Civ. A. Nos. 37642, 38699, 40016, 36789, 3706, 37253, 36331, 37632, 36980, 37120, 37287, 37320, 37695, 37866, 37647 and 38125.

United States District Court
E. D. Pennsylvania.

Feb. 15, 1968.

Supplemental Order June 21, 1968.

See also D.C., 44 F.R.D. 412.

Krusen, Evans & Byrne, by Thomas E. Byrne, Jr., Philadelphia, Pa., for certain shipowners in aforementioned actions, defendants.

Stradley, Ronon, Stevens & Young, by C. Clark Hodgson, Jr., Philadelphia, Pa., for certain shipowners in aforementioned actions, defendants.

Marshall, Dennehey & Warner, by Harold S. O'Brian Jr., Philadelphia, Pa., for certain stevedores in aforementioned actions, third-party defendants.

Joseph R. Thompson, by Roger B. Wood, Philadelphia, Pa., for certain stevedores in aforementioned actions, third-party defendants.

Kelly, Deasey & Scanlan, by Frank C. Bender, Philadelphia, Pa., for certain stevedores in aforementioned actions, third-party defendants.

Fine, Staud & Silverman, by Arnold C. Grossman, Philadelphia, Pa., for certain plaintiffs in aforementioned actions.

Freedman, Borowsky & Lorry, by Avram G. Adler, Philadelphia, Pa., for certain plaintiffs in aforementioned actions.

Joseph Boardman, Philadelphia, Pa., for certain plaintiffs in aforementioned actions.

### OPINION OF THE COURT

MASTERSON, District Judge.

These cases involve a series of suits brought by injured longshoremen to recover damages from the owners of ships upon which they were injured. The longshoremen allege negligence and unseaworthiness on the part of the shipowners. The suits were brought in the District Court as a matter of diversity jurisdiction under Title 28 U.S.C. § 1332. The longshoremen in all of these actions demanded a jury trial pursuant to their rights under the 7th Amendment of the United States Constitution and under Rule 38 of the Federal Rules of Civil Procedure.

The shipowners have instituted separate actions against the stevedoring firms, hereinafter referred to as the stevedores, which employed the longshoremen. The theory of these actions is that the stevedore is liable to the shipowner for indemnity arising out of the former's breach of an implied warranty to load and/or unload the vessel in a safe and workmanlike manner.[1]

---

1. See generally, Ryan Stevedoring v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 131–132, 76 S.Ct. 232, 100 L.Ed. 133 (1956) ; Weinstock, "Employer's Duty to Indemnify Shipowners For Damages Re- covered by Harbor Workers", 103 Pennsylvania Law Review, 321, 332 (1954–55), contains a discussion of the theory underlying the indemnity action.

These indemnity actions have been brought as "admiralty" actions within the terms of Title 28 U.S.C. § 1333 which gives the federal courts exclusive and original jurisdiction of admiralty actions.

■ The shipowners presently have moved to consolidate their indemnity actions with the longshoremen's original suits against them. The stevedores do not oppose consolidation provided that all of the factual issues in the consolidated trial are submitted to the jury. Accordingly, the stevedores have made a motion for a jury trial of all the factual issues. The shipowners oppose this motion.[2]

■ Since the same motions have been made in a large number of cases the issues involved were briefed and argued before a panel of this Court.[3] With the agreement of all party-litigants the Court decided to determine both the jury trial motion and the motion for consolidation in only those cases in which the jury motion was a timely one pursuant to Rule 38(b) of the Federal Rules of Civil Procedure. In all the remaining cases, including cases in which there was no jury trial motion, the Court has written a companion opinion. See, Turner v. Transportacion Maritima Mexicana S.A., and Transportacion Maritima Mexicana S.A. v. McCarthy, Inc., Adm., et al., 44 F.R.D. 412 (1968).

I

■ The Court's decision on the motion to consolidate requires little discussion. These motions have been made under Rule 42 of the Federal Rules of Civil Procedure permitting this court to order consolidation of actions arising out of " * * * a common question of fact * * * ". The actions involved here clearly satisfy the terms of Rule 42. In all of these cases the question of whether the stevedore owes the shipowner indemnity turns on the same facts as does the question of whether the shipowner is liable for the longshoreman's injuries. Consolidation here will result in judicial economy and will ex-

2. In a few of the current cases the stevedore, rather than the shipowner, is the party making the motion to consolidate. This distinction is not material to the decision on the motions to consolidate. The distinction is significant, although not controlling, with respect to the motions for jury trial. See, infra, p. 410, f.n. 25.

It also should be noted that the longshoremen generally favor both consolidation and a complete jury trial. Some longshoremen, however, have argued against consolidation on the basis that the resulting pattern of discovery procedures will prove prejudicial. The Court feels that these procedures can be developed in an equitable fashion.

3. The panel consisted of Judges A. Leon Higginbotham, Jr., Charles R. Weiner, Thomas A. Masterson, and E. Mac Troutman. The Court appointed this panel to consider the problems raised both here and in the companion case of Turner v. Transportacion, 44 F.R.D. 412, for the purpose of establishing a uniformity of action within this District pending a

definitive ruling by the United States Court of Appeals for the Third Circuit. For the same reason, the Court appointed a panel to decide a series of cases involving similar jurisdictional issues. See, Olivieri v. Adams et al., 280 F.Supp. 428, opinion filed January 23, 1968. The use of this panel procedure does not actually bind the other judges of this District to follow the decision either here or in Turner, but, like application of the doctrine of intra-court comity, this practice does help provide for a uniform interpretation of the law within any one District. See generally, E. g., White v. Baltic Conveyor Co., 209 F.Supp. 716, 722 (D.C.N.J., 1962), E. W. Bliss Co. v. Cold Metal Process Co., 174 F.Supp. 99, 121 (N.D.Ohio, Eastern Division, 1959), and Cepo v. Brownell, 147 F.Supp. 517, 521 (N.D.Calif., Southern Division, 1956), for a description of the policies served by intra-court comity. In the interest of these salutary policies none of the Judges of this Court has indicated an intention to depart from the decision here or in Turner pending a later determination by the Court of Appeals.

**402**

pedite the disposal of all of these cases.[4] Consolidation also will not prejudice the stevedores in their defense of the earlier action since it is conceded that they have been aware of the claims of the longshoremen since their inception.[5]

There is compelling precedent for consolidation in these cases. Ellerman Lines, Limited v. Atlantic & Gulf Stevedores, 339 F.2d 673 (C.A.3, 1964), directed consolidation of two actions identical to those with which this Court is now faced. The Court's reasoning in *Ellerman* applies with equal force to these cases:

"It would be duplicitous, unnecessarily time consuming, and possibly an invitation to controversy in one proceeding as to what had been decided in another, if * * * (this) civil action and this admiralty suit should be tried on separate occasions", p. 675.

In Jordine v. Walling, 185 F.2d 662 (C.A. 3, 1950), the Court ordered consolidation where the plaintiff-seaman had commenced two causes of action against the shipowner: one alleging negligence under the Jones Act, Title 46 U.S.C.A. § 688, and the other alleging liability under the traditional admiralty doctrine of maintenance and cure. Consolidation of these admiralty and common-law actions is not at all uncommon. See, Fitzgerald v. United States Lines, 374 U.S. 16, 83

S.Ct. 1646, 10 L.Ed.2d 720 (1963); Harney v. William M. Moore Building Corp., 359 F.2d 649 (C.A.2, 1966); Gontarski v. Calmar Steamship Corp., C.A. #40722, (E.D.Pa., Opinion filed May 11, 1967).

■ For the foregoing reasons the motions to consolidate the indemnity actions with the principal negligence actions in all of these cases will be granted.[6]

## II

A threshold difficulty presented by the stevedores' motions for a jury trial on all the factual issues in the consolidated actions pertains to the relationship between admiralty procedure and jury trial. The shipowners oppose the stevedores' motions on the basis that the use of juries is incompatible with admiralty jurisdiction which they have invoked as the basis of their indemnity actions. The shipowners do not argue that they have a constitutional right to try admiralty cases without a jury because that argument has been specifically rejected by the Supreme Court. See, *Fitzgerald*, supra, 374 U.S. at 20, 83 S.Ct. 1646. They do contend, however, that the tradition of trying admiralty claims without a jury is of such lineage that it rises close to the dignity of a constitutional right.

An examination of the history of admiralty law in America and in England indicates that there is neither an in-

4. See, Moore, Federal Practice, Vol. 5, ¶ 42.02, for a thorough discussion of the policies underlying Rule 42.

5. See the provisions of the Longshoremen's and Harbor Workers' Act, 44 Stat. 1424, Title 33 U.S.C. §§ 901 et seq., particularly § 914(b), (g). Of course in those cases in which the stevedores have made the motions for consolidation they obviously can not claim any prejudice resulting from the granting of these motions. Nor can the shipowners be materially prejudiced if the stevedores' motions are granted since they were the original defendants in the negligence actions brought by the longshoremen, had the first opportunity for full discovery in those actions and con-

trolled the times at which the stevedores were made parties to the actions.

6. In the remaining cases the Court has granted the motions to consolidate provided that all parties agree that all factual issues in the consolidated trial be tried to the jury. See, Turner v. Transportacion, supra, 44 F.R.D. pp. 414–415. Of course, consolidation is more feasible here than in *Turner* because of the availability of a single factfinding tribunal. If the consolidated cases here were to be tried to a bifurcated factfinding tribunal the result would be as unworkable here as it would be there. See, infra, p. 414.

herent incompatability between admiralty procedure and jury trial, nor any consistent historical practice excluding juries from admiralty suits.

Admiralty jurisdiction before the 14th Century was exercised by the local courts of the principal English seaport towns. These courts applied the laws of Oleron, and other customary codes, to transactions of a maritime nature.[7] During the same period admirals in the King's Navy exercised a jurisdiction which was limited to maintaining discipline over the fleet. Although the King exercised a limited amount of control over the local seaport courts, it was not until the middle of the Fourteenth Century that independent admiralty courts were established as an assertion of the King's sovereign power.

The jurisdiction of these independent admiralty courts, presided over by the admirals, was originally limited to cases in which Englishmen were charged with piracy. Such cases had repeatedly involved the King in diplomatic difficulties when adjudicated by the local seaport courts whose juries were reluctant to convict their fellow-seamen of piracy when the latter were charged with

plundering foreign vessels. As a result the crown often was forced to pay reparation to the nation whose ships had been the victims. The crown thus found it expedient to assert its sovereign power by having admiralty matters adjudicated by Royal officials sympathetic to its problems.[8] For similar reasons, i. e. to enforce the unpopular trade and navigation statutes, particularly the Stamp Act, the Vice-Admiralty Courts were established in the colonies.[9]

Reaction to the non-jury procedure of these admiralty courts was generally unfavorable in both England and the Colonies.[10] In England, Lord Coke led a successful battle on behalf of the common-law lawyers to protect the right to jury trial and forestall the growth of the Admiralty Courts.[11] The result was that admiralty jurisdiction in England, at the time of American Independence, was limited to prize cases and cases involving contracts made at sea to be performed at sea.[12] All other maritime matters were adjudicated in common-law courts before juries.[13]

Resolution of the jury issue in admiralty cases has not been as unequivocal in the United States. The Consti-

7. Holdsworth, A History of English Law, Volume 1, (London, Metheun, Inc., 1956), pp. 527–533; Laing, "Historic Origins of Admiralty Jurisdiction in England", 45 Michigan Law Review, 163, 164. For a description of the early history of these courts, see generally Holdsworth, Ibid., pp. 544–45.

8. Holdsworth, Ibid., pp. 544–45, 552. Later, under the Tudors, the admiralty courts became more efficient, and their jurisdiction practically comprised all mercantile and shipping cases: "All contracts made abroad, bills of exchange * * * commercial agencies abroad, charter parties, insurance, average, freight, non-delivery of, or damage to, cargo, negligent navigation by masters, mariners, or pilots, breach of warranty of seaworthiness, and other provisions contained in charter parties; in short, every kind of shipping business was dealt with by the Admiralty Court." See, also, Select Pleas of the Admiralty (S.S.) i lxvii.

9. Ubbelohde, The Vice-Admiralty Courts and the American Revolution, (Chapel Hill, 1960), pp. 76–77.

10. See, Holdsworth, Ibid., p. 548; Coke, Fourth Institute, ¶ 4, c. 22; Crump, Colonial Admiralty Jurisdiction in the 17th Century, (London, 1913). Beer, British Colonial Policy, 1754–65 (N.Y., 1908), pp. 125–127.

11. See, The Propeller Genessee Chief et al. v. Fitzhugh et al., 53 U.S. (12 Howard) 443, 459, 13 L.Ed. 1058 (1851), and, Holdsworth, Ibid., p. 553.

12. See generally, Delovio v. Boit, 7 Fed. Cas. No. 3,776, p. 418, 426, 2 Gall. 398 (Story, Circuit Justice, 1815).

13. See generally, The Propeller, supra, 53 U.S. at p. 459, and Holdsworth, Ibid., p. 559 et seq., for an account of the extension of admiralty jurisdiction in England in the mid-19th Century.

tution itself contains two relevant provisions, i. e. Article III, § 2, and the 7th Amendment. Neither provision, however, bears on the question of the propriety of jury trial in admiralty cases. In fact, the subject of admiralty jurisdiction does not seem to have been discussed at all at the Constitutional Convention.[14] It is clear, however, that the colonists' antipathy for the non-jury procedure was still marked at the time of Independence.[15] Indeed, at the time of the adoption of the Constitution at least eight of the colonies were using jury trials in admiralty cases.[16]

The prevailing practice in admiralty litigation in the United States since the time of Independence, however, reflects a fairly precise delineation of the proper relationship between admiralty law and the use of juries. The relevant federal statute is Title 28 U.S.C. § 1333 which establishes original and exclusive jurisdiction of admiralty suits in the federal courts, though " * * * saving to suitors in all cases all other remedies to which they are otherwise entitled." In general, the exclusive jurisdiction feature of § 1333 has been limited to admiralty cases involving *in rem* claims such as enforcement of maritime liens. Admiralty cases involving *in personam* claims have been determined to be equally cognizable as an original matter both in the federal and state courts.[17]

■ When a plaintiff brings an *in personam* admiralty action in the state

courts he often is entitled to a jury trial. See generally, Leon, supra, 78 U.S. at p. 188, Keough v. Cefalo, 330 Mass. 57, 110 N.E.2d 919, 921–922 (1952), and Marget, "Right of a Seaman to Trial by Jury", 68 Dickinson Law Review, 62, 64 (1963). Moreover, a plaintiff bringing an *in personam* admiralty action in the federal courts is entitled to a jury trial if he can establish jurisdiction on the law side pursuant to Title 28 U.S.C. § 1332 by satisfying the diversity of citizenship and jurisdictional amount requirements. See generally, Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Atlantic & Gulf Stevedores, Inc. v. Ellerman, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); and, 68 Dickinson L.R. 62, supra.

It is significant that this jurisdictional allocation of admiralty actions, resulting in the use of jury trials for a large number of them, has developed in the face of the Judiciary Act of 1789, 1 Stat. 77, § 9, which provided:

" * * * (T)he trial of issues of fact, in the district courts, in all cases except civil cases of admiralty and maritime jurisdiction, shall be by jury."

This statute remained in force until 1948 when it was repealed by the Judiciary Act of 1948, Title 28 U.S.C. § 770. The committee recommending the repeal noted that the substance of the law was embodied in Rule 38 of the Federal Rules

14. See, Farrand, Records of the Federal Convention of 1787, (New Haven, 1911). Writings of the early interpreters of the Constitution deal with the problem but are not very helpful in resolving it. See, Hamilton, The Federalist, (Phila., 1873), p. 620, and Justice Story, DeLovio v. Boit, supra, 7 Fed.Cas. No. 3,776, at pp. 443–44.

15. Ubbelohde, Ibid., p. 195 et seq. The Colonists' feelings against the non-jury procedure were dramatized vividly when the crown attempted to prosecute John Hancock in the admiralty courts for a violation of the Stamp Act. John Adams successfully defended Hancock. For an

interesting account of the incident, see Ubbelohde, Ibid., pp. 119–127.

16. The Federalist, supra, pp. 617–618; Knauth, Benedict on Admiralty, Volume 4 (N.Y., 1940), pp. 439–40; and generally, Ubbelohde, Ibid., p. 196.

17. This distinction between *in personam* and *in rem* claims is referred to in Leon v. Galceran, 78 U.S. (11 Wall.) 185, 188, 190–192, 20 L.Ed. 74 (1872), The Glide, 167 U.S. 606, 617–618, 17 S.Ct. 930, 42 L.Ed. 296 (1897), Mangone v. Moore-McCormack Lines, 152 F.Supp. 848, 854–55 (E.D.N.Y., 1957), and Gilmore and Black, The Law of Admiralty, (1957), p. 33.

of Civil Procedure.[18] The actual disposition of admiralty cases since 1789 clearly indicates that Congress's intention in the Judiciary Acts of 1789 and 1948 was *only* not to *require* jury trials in admiralty and maritime matters. See, *Fitzgerald,* supra, 374 U.S. p. 20, 83 S.Ct. 1646, and, The Propeller, supra, 53 U.S. p. 489.

Congress itself has at least twice provided for jury trial in actions which traditionally would be considered to be admiralty actions. In the exercise of its power to regulate commerce, and under the umbrella of the "necessary and proper" Clause, Article I, § 8, Cl. 18, Congress has adopted both Title 46 U.S.C. § 688, Recovery for Injury to or Death of Seamen, The Jones Act, and Title 28 U.S.C. § 1873, The Great Lakes Act. Plaintiffs bringing causes of action under either of these statutes can gain access to the federal courts as a matter of federal question jurisdiction pursuant to Title 28 U.S.C. § 1331. The Supreme Court has sanctioned Congress's adoption of common-law procedure in maritime cases:

> "It is now well settled that a right peculiar to the law of admiralty may be enforced either by a suit in admiralty or by one on the law side of the court * * *", Seas Shipping Co. v. Sieracki, 328 U.S. 85, 88–89, 66 S.Ct. 872, 874, 90 L.Ed. 1099 (1946).

See also generally, Panama R. R. Co. v. Johnson, 264 U.S. 375, 388, 44 S.Ct. 391, 68 L.Ed. 748 (1924). The continued practice of bringing Jones Act suits on the law side of the federal courts is consistent with these conclusions. See generally, *Fitzgerald,* supra.[19]

The history of America's experience with admiralty procedure thus demonstrates that juries often deal with ad-

miralty matters, and are competent to do so. This conclusion does not impair the continued vitality of a discrete admiralty jurisdiction in the federal courts, nor is it inconsistent with the language of Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (Opinion by Frankfurter, J., 1959), emphasizing the intended and important separateness of federal question and admiralty jurisdiction. The Court's opinion in *Romero* does not suggest that there was any inherent incompatibility between jury trial and admiralty actions. In fact, the Court suggested the opposite by noting that the disappointed suitors there could gain access to a jury by use of pendent jurisdiction. See, *Romero,* supra, 358 U.S. at pp. 380–381, 79 S.Ct. 468.

This result similarly is not in conflict with the express concerns of the Advisory Committee on Admiralty Rules of Procedure. This Committee recommended the general unification of admiralty and civil procedure, but specifically urged the preservation of certain distinctively maritime remedies. See, Proposed Supplemental Rules, 34 F.R.D. 351 (1963). The remedies with which the Committee was particularly concerned have been preserved in the Supplemental Rules. See, Rule A, Scope of Rules. These remedies can be invoked in cases still exclusively cognizable on the admiralty side of the federal courts, and also in those *in personam* admiralty actions, in which they are applicable, which are tried to the law side of the federal courts.

■ Finally, the historical arguments of the shipowners are of little weight because the shipowners' current indemnity actions are not peculiarly maritime in nature nor have they ever been considered such. The actions technically can

---

18. Title 28, U.S.C. § 1873, p. 1884, notes the relevant legislative history.

19. No matter which side of the court the case is on admiralty principles are preserved. See, Carlisle Packing Co. v.

Sandanger, 259 U.S. 255, 259, 42 S.Ct. 475, 66 L.Ed. 927 (1922), Garrett v. Moore-McCormack Co., 317 U.S. 239, 243–244, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

be considered admiralty actions because they involve the operational concerns of the shipping industry. See, Insurance Co. v. Dunham, 78 U.S. (11 Wallace) 1, 26, 20 L.Ed. 90 (1870); American Stevedores v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); and also, Gilmore and Black, supra, p. 20. Special rules will therefore determine the obligations of the respective parties to the indemnity obligation. See generally, Italia Soc., etc. v. Ore. Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 11 L.Ed. 2d 732 (1964). But these "special rules" are not technical niceties beyond the ken of juries. Instead they are,

" * * * (R)ules that are designed to minimize the hazards encountered by seamen, to compensate seamen for the accidents that inevitably occur, and to minimize the likelihood of such accidents." Italia Soc., supra, 376 U.S. at 324, 84 S.Ct. at 754.

Any difficulties arising from these rules can be adequately covered in the court's charge to the jury.

Indemnity actions in general have long been cognizable in common-law courts dealing with non-maritime situations. See, Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S. Ct. 564, 40 L.Ed. 712 (1896); Standard Oil Co. v. Robins Dry Dock & Repair Co., 32 F.2d 182 (C.A.2, 1929). This is not the case with the admiralty remedies such as maritime attachment and limitation of liability which have been preserved in the Supplemental Rules. See, The Glide, supra, 167 U.S. at pp. 617, 618, 17 S.Ct. 930, and, Proposed Supplemental Rules, 34 F.R.D. 351 et seq. (1964). The shipowners, however, rely upon American Stevedores v. Porello, supra, to support their proposition that the indemnity action is distinctively admiralty in nature.

The Supreme Court in *Porello*, supra, 330 U.S. at p. 456, 67 S.Ct. 847, did hold that a stevedoring contract was maritime in nature, and that, therefore, a District Court sitting as an admiralty court had jurisdiction to enforce a written indemnity agreement between the defendant-shipowner and the third-party-defendant stevedore. Nothing said in that case, however, is inconsistent with having a jury determine the factual issues involved in the indemnity action. *Ryan*, supra, 350 U.S. at p. 131, 76 S.Ct. 232, was the first case to expressly expand *Porello's* holding to sanction a shipowner's indemnity action against a stevedore, where the stevedore was the employer of an injured longshoreman and where there was no express indemnity agreement between the shipowner and the stevedore. The Court found that by merely agreeing to load or unload a ship the stevedore was bound by an *implied* " * * * warranty of workmanlike service * * * ", *Ryan*, supra, 350 U.S. at pp. 133–134, 76 S.Ct. 232. *Ryan* held that this warranty was breached when a longshoreman was injured as a result of the improper loading of the vessel by the stevedore.

The bulk of substantive law applicable to the merits of these indemnity actions has been developed in cases since *Ryan*.[20] In all of these cases the shipowner brought the stevedore in as a third-party defendant in the original action and the factual issues in both actions were tried to the *same* jury. In fact, since the establishment of the indemnity cause of action there have been only a few reported cases in which the shipowners have brought an independent admiralty suit for indemnity. See E. g., Finley v. United States, 130 F.Supp. 788, 791 (D.C. N.J., 1955); Amador v. The Ronda, 146 F.Supp. 617, 621 (S.D.N.Y., 1956). The Third Circuit did not expressly sanction

20. See generally, Weyerhauser S. S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Serrano v. Empresa Lineas Maritimas Argentinas, 257 F.Supp. 870 (D.C.Md., 1966).

this procedure until *Ellerman,* supra, 339 F.2d at 674.[21]

In view of both the recency of these indemnity actions, whether brought independently or in a third-party form, and the use of juries when the third-party practice has been used, it would be unrealistic to burden them with trappings traditionally associated with admiralty law but no longer supported by viable policy considerations.

### III

It appears that there is no important policy reason why this court should not grant the stevedores' motions and direct that all factual issues in the consolidated actions be tried to the jury. Indeed, use of one fact-finder in these consolidated actions will promote several favorable policy interests. This procedure will both avoid the problem of collateral estoppel, which would result from the use of a bifurcated fact-finding tribunal, and promote judicial economy.

A bifurcated fact-finding tribunal would prove not only cumbersome, but perhaps unworkable. Since the claim of the shipping company against the stevedore would not be before the jury, it could be argued that testimony relating to the indemnity claim should be taken out of the presence of the jury. If this argument were accepted, there would follow endless wrangling as to whether a question related to the liability of the shipowner or to the indemnity claim, or both. When a question was held to relate to the indemnity claim only, the jury would have to be excused during this phase of the testimony. The result would be that the jury would be endlessly shuttling back and forth between the jury box and the jury ante-room during the course of the trial. See, Turner v. Transportacion, supra, 44 F.R.D. pp. 417, 418.

Since the negligence actions are tried to a jury as a matter of right, clearly the jury, rather than the court, is the appropriate single fact-finder. Moreover, the jury is the fact-finding tribunal preferred by the federal courts. See generally, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1958). For all of these reasons, this Court has concluded that the stevedores' motions for a jury trial of all the factual issues in the consolidated actions, excepting the issue of shipowners' counsel fees in the indemnity actions which will be severed as noted infra, page 411, will be granted.

The result reached here is consistent with that reached by the Supreme Court in Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). In *Fitzgerald* the appellant's intestate sued for damages for negligence under the Jones Act, for damages based on unseaworthiness of the ship, and for maintenance and cure. Plaintiff's demand for a jury trial on all counts was denied by the lower courts, see Fitzgerald v. United States Lines, 306 F.2d 461 (C.A.2, 1962), but was granted by the Supreme Court. The opinion reflected consideration of two important and related factors, i. e. the similarity of the plaintiff's allegations, and the confusion resulting from the use of two fact-finders. See, *Fitzgerald,* supra, 374 U.S. at pp. 18–19, 83 S.Ct. 1646. Both of these factors are present here, and, accordingly, *Fitzgerald's* reasoning is applicable here:

"Where, as here, a particular mode of trial being used by many judges is so cumbersome, confusing, and time consuming that it places completely unnecessary obstacles in the paths of litigants seeking justice in our courts, we should not and do not hesitate to take action to correct the situation. Only one trier of fact should be used for

---

21. Because of the backlog of civil cases in this Circuit most of the independent indemnity actions brought since *Ellerman* are still pending and are involved in this current litigation.

the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments," *Fitzgerald*, supra, 374 U.S. at p. 21, 83 S.Ct. at p. 1650.

The shipowners attempt to distinguish *Fitzgerald* on the basis that the causes of action involved there were more closely related than are those involved here. Although the indemnity action does involve one element of damages not relevant to the negligence action, i. e. the issue of the shipowners' attorney fees, the liability questions involved in both actions substantially overlap. In fact, the indemnity action's function of allocating losses caused by the shipboard injuries is related inextricably to the negligence action. See generally, De-Gioia v. United States Lines Co., 304 F. 2d 421, 426 (C.A.2, 1962). It is true that none of the cases following *Fitzgerald* have involved a claim for indemnity, but, on the other hand, none of these cases suggest that the *Fitzgerald* result is inappropriate where the admiralty action is one for indemnity rather than for maintenance and cure. See E. g., Harney v. William M. Moore Building Corp., 359 F.2d 649 (C.A.2, 1966); Lewis v. Federal Barge Lines, Inc., 342 F.2d 560 (C.A.7, 1965). On the contrary, *Ellerman*, supra, 339 F.2d at pp. 67 –76, indicates that the question is a close one.

The shipowners contend that *Fitzgerald* is distinguishable also because its holding is based upon the theory of pendent jurisdiction which is inapplicable in these cases. Their argument is that, because the negligence claim in *Fitzgerald* was a federal question claim, the ancillary maintenance and cure claim was in federal court as a matter of both admiralty jurisdiction and pendent jurisdiction. Accordingly, this claim, as a "pendent" claim, was one which would properly be tried as a matter of right to a jury. On the other hand, the indemnity claims in the current actions are based solely upon admiralty jurisdiction. This is so because the principal negligence claims here are diversity claims and this Court's discretionary power to exercise pendent jurisdiction does not ordinarily apply to diversity cases. Their conclusion, therefore, is that the indemnity claims can not be considered "pendent" claims for purposes of establishing a right to jury trial.

 As an initial matter pendent jurisdiction does not seem to be a theory relevant either here or in *Fitzgerald*.[22] Assuming that the theory is relevant here, however, the shipowners' contentions still are not sound. The ancillary claim here, unlike those involved in the ordinary diversity cases where the exercise of pendent jurisdiction is at issue, concerns federal maritime law, and, therefore, considerations of comity are not relevant. Cf. Jenkins v. Roderick, 156 F.Supp. 299, 301 (D.C.Mass., Opinion by Wyzanski, J., 1957); and, Evans v. American Export Lines, Inc., 175 F. Supp. 386 (S.D.N.Y., 1959). In fact, expansive jurisdictional concepts such as pendent jurisdiction are appropriate in maritime cases because of the desirability of developing a uniform body of federal law in this area.

A related argument of the shipowners is that *Fitzgerald* is distinguishable because it involved two parties instead of three. Pendent jurisdiction has been extended to cases involving three parties. See Wilson v. American Chain, 364 F.2d 558 (C.A.3, 1966). Moreover, this distinction is primarily one of form as, de-

---

22. Essentially the theory is relevant when the issue is whether or not a federal court has jurisdiction to hear a claim. Here the shipowners themselves have asserted federal jurisdiction of the indemnity claims, and, by objecting to the jury trial motions, they raise only the issue of how that jurisdiction should be exercised. Thus, unlike the classic situation of pendent jurisdiction in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), both claims here are independently within the jurisdiction of the federal courts.

pending on the particular circumstances of each case, the stevedore will be effectively aligned with either the longshoreman or the shipowner. Also, as noted supra, page 11, the operative facts in the two causes of action here are related as closely as they are in the *Fitzgerald* situation. By having a complete jury trial difficulties of collateral estoppel will be as much avoided here as in *Fitzgerald*.

The shipowners' opposition to the jury trial motions also relies upon the wording of the relevant Federal Rules of Civil Procedure which provides that a party's motion for jury trial is dependent upon his right to such a trial. See, Rules 38 (a), (b), (e), and 39(b); see also, Advisory Committee's Note, Amendments to Rules of Civil Procedure, 34 F.R.D. 331, 338 (1964). Despite this statutory language, however, the Supreme Court decided in *Fitzgerald,* supra, 374 U.S. at 21, 83 S.Ct. 1646, that the plaintiff did have a *right* to have his admiralty claim tried to a jury. The Court's reasoning there, that the policy interests served by having a complete jury trial outweighed the literal thrust of the Rules, is also applicable to these cases.

Another important consideration in granting the stevedores a jury trial arises out of the similarities between the consolidated trial here and the trial in cases in which the Rule 14 procedure has been employed. See generally, Gladden v. Cia De Commercio Y Vapores S.A., 26 F.R.D. 155 (E.D.Pa., 1960). The stevedores have noted this similarity and have argued that to deny their jury trial motions would be to sanction a maneuver by the shipowners which the latter themselves concede to be of only a tactical nature. The matter was put somewhat euphemistically by counsel for one of

the shipowners when he described the "advantages" to his client derived by using the admiralty procedure:

> "Another much more practical advantage * * * is the fact that this concept (of indemnity) is relatively easy for judges to apply and relatively difficult for juries to apply * * *" Transcript of Hearing held August 22, 1967, page 13.

See also, *Ellerman,* supra, 339 F.2d at 674.

Cases in which the shipowner has impleaded the stevedore hold that the latter has the requisite *right* to a jury trial. See, Atlantic & Gulf Stevedores, Inc. v. Ellerman, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1961); McAndrews v. United States Lines, 167 F.Supp. 41 (S.D.N.Y., 1958); McNamara v. Weichsel Dampschifffahrts, Ag Kiel, 293 F.2d 900 (C.A.2, 1961); and *Weyerhauser,* supra. Consolidation here serves the same purposes of judicial economy and expedition of litigation which are served by the impleading procedure. The general usage of the Rule 14 procedure in cases of this type, see supra, page 10, also reflects the similarity between that procedure and the consolidation machinery employed here.

The determination of the proper fact-finding tribunal to be used in any type of case should not depend upon a process of labeling which bears no relationship to the realities of the litigation. It is unfair to deprive the stevedores of a jury trial here merely because the shipowners have employed consolidation rather than impleading procedures.[23]

This Court's decision does not deprive the shipowners of their traditional rights as plaintiffs to choose preferred methods of procedure. New-

---

23. To sanction the shipowners' tactics would also undercut the rationale of decisions such as Noel v. Linea Aeropostal Venezolana, 318 F.2d 710 (C.A.2, 1963) which have emphasized the wisdom in avoiding "excessive and unnecessary suits." *Noel* is factually distinguishable from these cases but it reflects relevant policy interests: " * * * (T)hese rules * * * shall be construed to secure the just, speedy, and inexpensive determination of every action.", Rule 1, Federal Rules.

ly-adopted Rule 9(h) of the Federal Rules of Civil Procedure specifically preserves these rights.[24] The primary thrust of this Rule, however, is to preserve those remedies specifically noted in the Supplemental Rules for Certain Admiralty and Maritime Claims. These remedies will be preserved for parties desiring them in the consolidated actions.[25]

■ The shipowners make several further contentions. The first is that a jury is simply not competent to decide the legal issues involved in the indemnity action. Plainly stated, the basis for this argument is the fear of the shipowners that many of their claims for indemnity do not have much jury appeal. In view of the demonstrated competency of juries in dealing with identical factual issues in Rule 14 cases, see supra, page 406, this contention must be dismissed.

Secondly, the shipowners contend that such a significant change of trial procedure must be left to Congress, or at least, to the Supreme Court. The Supreme Court's willingness to forge new procedure in *Fitzgerald*, however, indicates that the relevant statutes, i. e. Title 28 U.S.C. §§ 2071, 2072, and 2073, contemplate only formal Congressional approval in the rule-making area.[26] As a logical matter, of course, it is necessary for the lower courts to rule upon these issues before the Supreme Court can ever face them.

### IV

■ Finally, the shipowners oppose the jury trial motions because of the alleged difficulty and possible impropriety involved in proving the reasonable value of their counsel fees which they contend are a recoverable item of damages in the indemnity cause of action. See generally, Ammesmaki v. Interlake Steamship Company, 342 F.2d 627, 630–31 (C.A.7, 1965). The difficulty in requiring counsel in any type of case to prove the reasonableness of his fees to a jury which must decide that very case is apparent. Moreover, it is likely that final determination of the appropriate amount of attorneys' fees to which the shipowners are entitled can not be made until after a motion for a new trial and possibly not until after appeal, events which will occur long after the trial jury has been discharged.

A proper resolution of this problem, however, does not require denial of the

---

24. Rule 9(h) reads in pertinent part: "A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 26(a), 38(e), 73(h), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims."

25. Furthermore, by requesting consolidation the shipowners have lost their standing to refer to the traditional prerogatives of party-plaintiffs. In dealing with consolidation, pursuant to Rule 42 of the Federal Rules, this Court " * * * may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Ordering jury trials of all the factual issues in these cases thus is consistent with this Court's supervisory control of Rule 42 proceedings. If the shipowners are substantially concerned about trying their cases solely to the court they may delay institution of their indemnity actions until the conclusion of the parent negligence actions.

Of course, both the consideration noted supra, p. 409, regarding the "tactical nature" of the shipowners' motions, and the consideration here, regarding the method by which the shipowners have estopped themselves from objecting to the jury trial motions, are inapposite in the few cases in which the stevedores are the parties who have moved for consolidation. Granting the jury trial motions in these few cases is supported, however, by all the other more substantial considerations noted above.

26. The conclusion here that Congress's role in this area is of a formal nature doesn't negative the earlier conclusion supra, page 403, that Congress in fact does have the *power* to change the method of trial in admiralty cases.

jury trial motions. Instead, the appropriate remedy is to sever determination of this one issue from the rest of the case pursuant to Rule 42(b) of the Federal Rules of Civil Procedure.[27] This conclusion is supported by the fact that the issue of attorneys' fees does not involve the same evidence as is involved in the rest of the action, and thus the issue is easily severable. See, Moore, Federal Practice, Volume 5, ¶ 42.03, p. 1217. In fact, this result was deemed to be the most appropriate one in similar cases recently before the Federal District Court for the Eastern District of Virginia.[28]

For all of the foregoing reasons the motions to consolidate in the above-captioned cases are granted. The issue of fees for counsel for the shipowners in the indemnity action is severed from the trial of the consolidated action and is to be determined after the final termination of each of the consolidated actions. All other factual issues arising in the consolidated action shall be submitted to the jury.

## SUPPLEMENTAL ORDER

AND NOW, this 21st day of June, 1968, upon consideration of various petitions for re-hearing and post-judgment motions relating to the Orders entered by this Court in the above-captioned cases on February 15, 1968, it is hereby ORDERED that:

Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, and in accordance with the Opinions entered by this Court in the above-captioned cases on February 15, 1968, Civil Action Nos. 38765, 36210, 38670, 39195, 36819, 38769, 36410, 37344, and 37345, and the related

Admiralty Action Nos. 41 of 1966, 507 of 1966, 367 of 1966, 577 of 1966, 497 of 1966, 469 of 1966, 135 of 1966, 415 of 1966, and 579 of 1966, are DELETED from the Order entered on February 15, 1968, in Turner v. Transportacion, Civil Action No. 37221, et al, and are ADDED to those cases covered by the Order entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al.; D.C., 44 F.R.D. 412.

Pursuant to a motion made under Rule 60(a) of the Federal Rules of Civil Procedure by American Export Isbrandstsen Lines, Inc., shipowners in these actions, Civil Action Nos. 38125 and 42207 are DELETED from the Order entered on February 15, 1968, in Turner v. Transportacion, Civil Action No. 37221, et al;

Pursuant to petitions for rehearing or, in the alternative, motions to amend under Rule 59(e) of the Federal Rules of Civil Procedure, made by certain stevedoring companies named as third-party defendants in certain of the cases covered by the Order entered on February 15, 1968, in Turner v. Transportacion, Civil Action No. 37221, et al, that Order is AMENDED to include the following statement:

The Court is of the opinion that this Order involves controlling questions of law as to which there is a substantial ground for differences of opinion and that an immediate appeal from this Order, as authorized by 28 U.S.C. § 1292 (b), may materially advance the ultimate termination of this litigation,

and the operation of this amended Order upon any case in which an appeal is taken is STAYED until ten days after the United States Court of Appeals for the Third Circuit has decided an application

---

27. Rule 42(b) reads in pertinent part: "(b) Separate Trials. The court in furtherance of convenience or to *avoid prejudice* may order a separate trial of any claim * * * or of *any separate issue* * * *" (Emphasis added).

28. See Judge Hoffman's Advisory Opinion indicating that disposition of the issue of

attorneys' fees would be by the court alone. Judge Hoffman's Opinion related to two Admiralty and two Civil cases pending before the District Court for the Eastern District of Virginia, Adm. Nos. 8599 and 8603 and Civil Nos. 5165 and 5226, and was in the form of a letter to counsel dated January 6, 1966.

by petitioning third-party defendants for permission to take an interlocutory appeal under Title 28 U.S.C. § 1292(b), and, if such application is allowed, the operation of this amended Order as to such appealed case is STAYED until the final determination of such appeal;

Pursuant to motions made under Rule 60(a) of the Federal Rules of Civil Procedure by Farrell Lines, Inc. and Prudential Lines, Inc., shipowners in these actions, Civil Action No. 38699 and Admiralty Action No. 31 of 1966, and Civil Action No. 40016 and Admiralty Action No. 525 of 1966, respectively, are DELETED from the Order entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al;

Pursuant to motions made under Rule 42(a) of the Federal Rules of Civil Procedure by Farrell Lines, Inc. and Prudential Lines, Inc., shipowners in these actions, Civil Action No. 38699 is CONSOLIDATED for trial with Admiralty Action No. 31 of 1966, and Civil Action No. 40016 is CONSOLIDATED for trial with Admiralty Action No. 525 of 1966, and in both consolidated trials a jury trial will be AWARDED on all issues of fact between the parties except the issues of counsel fees in accordance with the Opinion entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al;

Pursuant to motions to amend under Rule 59(e) of the Federal Rules of Civil Procedure made by Prudential Lines, Inc. and Farrell Lines, Inc., defendants and third-party plaintiffs in Civil Action No. 40016 and Admiralty Action No. 525 of 1966, and in Civil Action No. 38699 and Admiralty Action No. 31 of 1966, respectively, the Order entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al, is AMENDED to include the following statement:

> The Court is of the opinion that this Order involves controlling questions of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from this

Order, as authorized by 28 U.S.C. § 1292(b), may materially advance the ultimate termination of this litigation, and the operation of this amended Order upon any case in which an appeal is taken is STAYED until ten days after the United States Court of Appeals for the Third Circuit has decided an application by these petitioners for permission to take an interlocutory appeal under Title 28 U.S.C. § 1292(b) and, if such application is allowed, the operation of this amended Order as to such appealed case is STAYED until the final determination of such appeal.