William TURNER

v.

TRANSPORTACION MARITIMA MEXICANA S. A.

TRANSPORTACION MARITIMA MEXICANA S. A.

v.

J. A. McCARTHY, INC.

Civ. A. Nos. 37221, 37205, 37556, 37701, 38765, 36210, 38670, 39195, 36848, 36486, 37135, 36954, 47787, 37458, 37344, 37345, 37474–37485, 36841, 36869, 36819, 38125, 38769, 37488, 39018, 36410, 37486, and 37487.

United States District Court
E. D. Pennsylvania.

Feb. 15, 1968.

Supplemental Order June 21, 1968.

Krusen, Evans & Byrne, by Thomas E. Byrne, Jr., Philadelphia, Pa., for certain shipowners in aforementioned actions, defendants.

Stradley, Ronon, Stevens & Young, by C. Clark Hodgson, Jr., Philadelphia, Pa., for certain shipowners in aforementioned actions, defendants.

Marshall, Dennehey & Warner, by Harold S. O'Brian, Jr., Philadelphia, Pa., for certain stevedores in aforementioned actions, third-party defendants.

Joseph R. Thompson, by Roger B. Wood, Philadelphia, Pa., for certain stevedores in aforementioned actions, third-party defendants.

Kelly, Deasey & Scanlan, by Frank C. Bender, Philadelphia, Pa., for certain stevedores in aforementioned actions, third-party defendants.

Fine, Staud & Silverman, by Arnold C. Grossman, Philadelphia, Pa., for certain plaintiffs in aforementioned actions.

Freedman, Borowsky & Lorry, by Avram G. Adler, Philadelphia, Pa., for certain plaintiffs in aforementioned actions.

Joseph Boardman, Philadelphia, Pa., for certain plaintiffs in aforementioned actions.

## OPINION OF THE COURT

HIGGINBOTHAM, District Judge.

This opinion is a companion opinion to that written by this Court in Close v. Calmar Steamship Co., and Calmar v. Jarka Corp. of Phila., 44 F.R.D. 398. Opinion filed February 15, 1968; all of these cases have been heard before a

panel of this Court.[1] Both opinions deal with cases which have arisen out of similar factual settings, i. e., a suit by a longshoreman to recover for injuries sustained as a result of the alleged negligence of the owner of the ship upon which the longshoreman was employed. In both instances the accident has resulted in the filing of two separate actions. The longshoreman brought the original civil action against the shipowner in federal court as a matter of diversity jurisdiction under Title 28 U.S.C. § 1332. Subsequently the shipowner brought a separate admiralty action for indemnity from the stevedore under Title 28 U.S.C. § 1333 which grants the federal courts exclusive and original jurisdiction of admiralty actions.

The cases involved, both here and in *Close*, are representative of more than 1100 cases currently pending in this Court in which longshoremen have brought civil actions against shipowners. Nearly all of these cases involve in some way the legal problems dealt with in these two opinions, and essentially these cases can be categorized as coming within two groups:

A. Those cases in which the shipowners have made a motion for consolidation and the stevedores have made a timely motion for jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure; and

B. Those cases in which the shipowners have made a motion for consolidation, but in which there was either an untimely motion for jury trial or no such motion.

In Close v. Calmar, supra, the Court dealt with the cases included in the first group and granted both the shipowners' motions for consolidation and the stevedores' motions for jury trial of the factual issues in the indemnity action. The issue of the stevedores' liability for shipowners' counsel fees in the indemnity action was severed for later trial pursuant to Rule 42(b) of the Federal Rules. This opinion deals with the cases included in the second group and holds that the motions for consolidation will be denied *unless* all parties to the litigation agree that all factual issues, excepting that of shipowners' counsel fees, be tried to the same jury.

The Court decided to follow this procedure because of the large number of cases involving the same issues. By designating a few test cases in Close v. Calmar, supra, in which the Court would grant the stevedores' motions for jury trial on all factual issues in the consolidated trial (except that of counsel fees in the indemnity action), and conditioning consolidation in the remaining cases upon agreement of all parties to a jury trial, the Court has avoided two unwieldy situations which might have resulted

---

1. The panel consisted of Judges A. Leon Higginbotham, Jr., Charles R. Weiner, Thomas A. Masterson, and E. Mac Troutman. The Court appointed this panel to consider the problems raised both here and in the companion case of Close v. Calmar, supra, for the purpose of establishing a uniformity of action within this District pending a definitive ruling by the United States Court of Appeals for the Third Circuit. For the same reason, the Court appointed a panel to decide a series of cases involving similar jurisdictional issues. See Olivieri v. Adams et al., 280 F.Supp. 428. Opinion filed January 23, 1968. The use of this panel procedure does not actually bind the other judges of this District to follow the deci-sion either here or in *Turner* but, like application of the doctrine of intra-court comity, this practice does help provide for a uniform interpretation of the law within any one District. See generally, White v. Baltic Conveyor Co., 209 F.Supp. 716, 722 (D.C.N.J., 1962), E. W. Bliss Co. v. Cold Metal Process Co., 174 F.Supp. 99, 121 (N.D.Ohio, Eastern Division, 1959), and Cepo v. Brownell, 147 F.Supp. 517, 521 (N.D.Calif., Southern Division, 1956), for a description of the policies served by intra-court comity. In the interest of these salutary policies none of the Judges of this Court has indicated an intention to depart from the decision here or in *Close* pending a later determination by the Court of Appeals.

from a consideration of all cases together:

1. If the shipowners' motions for consolidation were granted here, without at the same time directing a complete jury trial, the resulting procedure might subsequently be found to be fundamental error in light of the Supreme Court's opinion in Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L. Ed.2d 720 (1963). See also, Close v. Calmar, supra.

2. If the shipowners' motions for consolidation were granted here and all the factual issues in the consolidated trial submitted to the jury, as in *Close*, this procedure in and of itself might constitute reversible error invalidating the results in innumerable cases and requiring massive relitigation at some future date.[2]

The Court's decision to deny the motions to consolidate here is based not only upon such practical considerations, however, but also upon substantive considerations which indicate that consolidation without a complete jury trial would be improper.

### I.

■■ The power of this Court to order a consolidation pursuant to Rule 42 of the Federal Rules is purely discretionary. See 5 Moore's Federal Practice, ¶42.02, p. 1203, 2d ed. 1966. The power is generally exercised when it is clear that consolidation will serve policies such as judicial economy and expedition of litigation. See Close v. Calmar, supra, 44 F.R.D. page 398, and Ellerman Lines, Ltd. v. Atlantic and Gulf Stevedores, 339 F.2d 673, 675 (3rd Cir., 1964). However, these interests must always be balanced against the prejudice to any party which might result from conducting the trial in a consolidated proceeding. Where there is such prejudice consolidation is improper. See generally, Mays v. Liberty Mutual Insurance Co., 35 F.R.D. 234, 235 (E.D.Pa., 1964); Bascom Launder Corp. v. Telecoin Corp., 15 F.R.D. 277 (S.D.N.Y., 1953); Moore, supra, page 1207.

It is clear that in these cases any favorable policy interests served by consolidation would be outweighed by the prejudicial effect which a consolidated trial involving a bifurcated fact-finding tribunal would have. Such a procedure would be particularly prejudicial to the interests of the injured longshoremen. See Close, supra, 44 F.R.D. page 407. The procedure would create unnecessary and confusing problems which would cloud the essential concern of the litigation, i. e. determination of the right of the longshoreman to recover for injuries resulting from the alleged negligence of another party. Among these problems would be the difficult one of determining what the actual jury findings were in the parent negligence action. See, *Close*, supra.

Moreover, in view of the problems which would be caused by proceeding with the shipowners' proposed bifurcated consolidated trial, which would not be a total jury trial on all of the major issues,[3] it is also likely that the type of consolidation requested would not in fact favor either judicial economy or expedite litigation. In fact, because of the large number of cases in which the consolidated procedure would be employed and the time consumed by using the proce-

2. If an appeal is taken from *Close* and if the holding is affirmed by the Court of Appeals, thereafter we will order consolidation of the civil and admiralty claims, sever the issue of counsel fees in the indemnity action, and direct that all other factual issues in the consolidated action be tried to the same jury where a timely motion has been filed and provided there is no other compelling reason to deny consolidation in the interest of justice.

3. We recognize that under our proposed order of consolidation there will not be a simultaneous jury trial on counsel fees. However, such a simultaneous jury trial on counsel fees is impractical if not impossible. See *Close*, supra, 44 F.R.D. pp. 410 and 411.

dure in any one case, this practice would actually *adversely* affect the prompt adjudication of all other civil actions in this District.

## II.

■■ While of course the Court is obligated to give individual justice in *each* case, nevertheless at some point a Court is obligated to evaluate the method by which it handles the bulk of its trial cases to ascertain whether the consolidation and calendar process has become so cumbersome that *without justification* it deters early trials. The maxim "justice delayed is justice denied" compels this Court to consider its process of calendaring to ascertain whether the process unnecessarily delays prompt trial, and therefore within such a context denies justice. We are obligated to evaluate our backlog and calendar statistical data and make a projection as to what would be the consequences of accepting the shipowners' present consolidation proposal which may involve hundreds of cases on this Court's docket.

Judge, now Chief Judge, Hastie has pointedly emphasized that "Rule 42(a), Federal Rules of Civil Procedure, confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial *as may facilitate the administration of justice*." Ellerman Lines, Ltd., v. Atlantic & Gulf Stevedores, Inc., supra, 339 F.2d at p. 675. (Emphasis added.) Within that concept of "facilitat[ing] the administration of justice," we must first recognize the tragic fact that the trial calendar of this Court has expanded with an ever-increasing backlog and that one of the most significant components of the backlog has been the longshoremen cases. As has been recognized in the most recent Annual Report of the Administrative Office of the United States Courts, the Judges of this Court have exerted extraordinary efforts to diminish the backlog. Despite these herculean efforts we have been able only to reduce the median time

for "civil cases terminated by trial" from 42 months to 41 months. This 41 month median time still unfortunately places us in "last" place in that this Court has the longest median time interval for termination of trials of any federal court in the nation.

Chief Judge Clary described the magnitude of the problem as it affects this District in a statement published by the Subcommittee on Improvements in Judicial Machinery of the Committee on the Judiciary, United States Senate, in their document captioned "Crisis In The Federal Courts—1967". Chief Judge Clary described the problem in this District as follows:

" * * * While in 1961 the longshoremen cases constituted only 8% of the total tort actions, . . . they constituted more than 23% of the total tort actions in June of 1966. Had that trend continued in its same progressive growth for another five years, the longshoremen cases could have constituted almost 60% of the total tort actions in our Court. We then compared and charted the proportionate increase of maritime cases (longshoremen and Jones Act) with the termination rate of maritime cases. The termination rate was shockingly low. We found that there were no more longshoremen jury cases tried in 1966 than there were in 1961, and that during some intervening years, there had been less longshoremen and Jones Act cases tried than had been tried in 1961. Yet, during the same five year period, there had been a 340% build-up in the pending longshoremen cases. We then made an analysis of the reason why the trial disposition had not increased proportionately and it was evident that the major factor was the concentration of maritime cases with a relatively small number of active trial lawyers. It was then extremely clear that even if we had sought the easy answer that our problem was solely the unavailability of Judges, that the maritime back-

log would not have been significantly diminished; for one of the major problems was congestion in the law firms among maritime practitioners." See, Hearing before the Sub-Committee on Improvement in Judicial Machinery of the Committee on the Judiciary, United States Senate, "Crisis In The Federal Courts—1967", p. 460.

As of June 30, 1967 there were 3,227 longshoremen marine personal injury cases pending in the United States District Courts. Of that number, more than one-third—1,141, were pending in our Court. *There are more longshoremen personal injury cases pending in our District than in any other United States District Court in the nation.*[4]

Perhaps a portion of this Court's backlog is attributable to counsel in the maritime field failing to move expeditiously on discovery and in the negotiations for settlements. As an example, we have examined the dockets of the very cases for which present counsel have moved for consolidation on the Part I trial calendar list. Despite the fact that most of these cases are to be tried within the next several weeks, we found, upon examination of each case, in which discovery had been requested by interrogatories, that none of the discovery had been completed and that *in not one instance had the interrogatories been answered as of the time of the argument though in most cases interrogatories had been outstanding for more than a year.*[5] (See brief of Krusen, Evans & Byrne analyzing the cases which their firm is involved in their Memorandum Sur Motions To Consolidate, pages 10 to 21).

During the last two years, we have repeatedly called to the attention of those law firms practicing in the maritime

---

**4.** The Administrative Office classified the longshoremen cases as "diversity of citizenship marine personal injury cases", and, while there may be a few such cases which are not longshoreman cases, more than 99.5% are longshoreman cases. Thus, for purposes of this opinion we have identified these cases as longshoreman cases.

**5.** The above statement about belatedness in answering interrogatories pertains only to those cases which were on Part I of our civil jury trial calendar—approximately the first one thousand civil jury cases on the trial calendar. However, the shipowners have also requested consolidation for cases on Part II of the civil jury calendar, the second thousand cases on our civil jury trial calendar. On September 12, 1967, the following letter was sent by Judge Higginbotham to the chief counsel for most of the shipowners who filed the instant motions to consolidate:

"At the call of the list for Part II, it was agreed that it was not necessary to provide the facts as to the status of discovery on the Part II cases: upon further evaluation of the problems, we would like to have detailed statements on the Part II cases similar to those * * * on the Part I cases; thus it is imperative that there be noted whether any type of discovery has been commenced and if so, when; if interrogatories have been filed noting the date they were answered, or if they have not been answered to date, and any other relevant statements pertaining to the status of discovery of these cases—particularly noting dates of formal requests for information, and the compliance therewith.

"Since you are the moving party on the motions to consolidate, we are requesting that you alone file this supplemental memorandum *within the next few days.*

"Thanking you for your cooperation, I am,"

Despite the fact that on September 12, 1967 we requested counsel to file the supplemental memorandum "within the next few days," as of January 29, 1968—four months later, we had not even received the courtesy of a reply; on January 29, 1968, the preliminary draft was available for circulation to all of the Judges of this Court, counsel was phoned noting the four month delay and only then did counsel reply by forwarding a rough draft memorandum. The reply indicates that of the 42 civil actions and 43 admiralty actions which the parties desired to have consolidated on Part II, that there was also for Part II cases a serious delinquency by both shipowners and stevedores in answering interrogatories many of which had been outstanding for more than a year.

field the impact of the concentration of these cases in the hands of so few law firms. As an example, one firm which specializes in longshoreman personal injury cases had approximately 35% of all of the cases on our Part I list, and another firm, also specializing in such cases, has more than 13% of the total cases on our trial list. These two firms have more than 95% of the plaintiffs' longshoremen cases in our Court. There is an equivalent concentration of cases among those firms representing the defendant-shipowners. One firm has approximately 35% of all of the cases on our Part I list, and another firm has approximately 18% of all of the cases on our Part I list. Together these two firms are involved in more than 95% of the longshoremen cases on our Part I list.[6]

This data is not cited to express a value judgment about what is obviously an oligopolistic concentration within this field by four law firms. The data, however, does reflect one of the practical problems which this Court must candidly recognize before granting the shipowners' motions in the manner in which they request them. *For it has become increasingly apparent during the last year that longshoremen cases often were not reached by lawyers in these four firms not because of the unavailability of Judges, but sometimes becaus of the unavailability of lawyers in those firms to reach those cases which could be called for trial.* This unavailability primarily was due to the fact that lawyers in those firms often had very heavy individual case loads.

Granting the shipowners' present motions would not only compound this Court's current problems of congestion, noted supra, but would also, within the context of each individual case, present this Court with what Mr. Justice Brennan, facing a different problem, described as a "grisly choice."[7] The grisly choice would be between two methods of trial management, neither of which would favor the expeditious disposition of longshoremen cases.

One alternative would be to grant the shipowners' motions and permit consolidation with a bifurcated trial. This alternative would result in having the civil phase of the trial before the jury and the admiralty phase before the Judge alone. Clearly this procedure would unduly prolong the length of *each* trial, and, because of the cumulative impact of the longer trial time consumed by hundreds of individual longshoremen cases, the prolongation of each individual case necessarily will have the deleterious effect of extending generally the backlog.

One of the representative trial problems which would result from granting the consolidation as requested would involve the treatment of evidence which is admissible only in the admiralty claim for indemnification and not admissible in the longshoreman's claim against the shipowner. The Court would be obligated to hear such evidence in the absence of the jury since it would not be relevant within the limited scope of the longshoreman's civil action against the shipowner. The occurrence of such instances, whether as

6. Out of the 1066 cases on our Part I Automated Calendar Control System, 342 are longshoremen cases and 144 Jones Act cases. Of the 342 longshoremen cases, Firm "A" has 201 of the plaintiffs' claims, and Firm "B" has 123; thus, 324 of the total 342. On the defendant shipowners' side, Firm "C" has 213 and Firm "D" has in excess of 115 cases.
   Our Court is grateful to the Administrative Office of the United States Courts, and particularly to Joseph F. Spaniol,

Jr., Chief of the Division of Procedural Studies and Statistics, and Russell Garman, who along with our Clerk of Court, have initiated an extraordinary project of putting cases on our trial lists on a computer and developing a system of calendar management and analysis known as Automated Calendar Control System.

7. Fay v. Noia, 372 U.S. 391, 440, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963).

to a fact or expert liability witness, would present the Court with two choices:

A. The Court could first permit the witness to testify solely on those phases relevant to the longshoreman's action against the shipowner. After the witness would finish his testimony on that phase the jury would be excused temporarily to permit the Judge to hear testimony from the *same witness* which was relevant solely in the admiralty action between the shipowner and the stevedore. This procedure would transform the jury box into a carousel with the jury moving in and out as each witness' testimony was fragmented to insure that the witness would not be able to testify before the jury as to that evidence which was solely admissible in the admiralty action.[8] The jury would wait in the jury room until such time as the Court had finished hearing the direct and cross-examination of the witness who would be testifying on the admiralty phase. Upon the completion of that witness' testimony, which in some instances could take considerable time, the jury would return to hear the fragmented portion of testimony presented by the next witness.

B. The Court could avoid the carousel effect, by which each witness' testimony would be fragmented and the jury required to parade in and out of the jury box, by first hearing the longshoreman's case in its entirety. Of course the jury would hear only that testimony which was relevant to the longshoreman's claim against the shipowner. Thereafter, if there was a verdict against the shipowner, the Court would hear from many of the same liability witnesses, many of whom could be employees of the shipowner, in a completely separate trial involving the admiralty claim for indemnification.

This second method of handling the trial, were this Court to grant the shipowners' motions, would be substantially similar to the second alternative of the "grisly choice" with which the shipowners have confronted us, i. e., to simply deny the motions to consolidate and have two totally separate trials. Both of these procedures obviously would require more judicial time and, accordingly, would result in an extension of our trial backlog.

From the standpoint of managing our judicial calendar it is therefore clear that either of the above alternatives is saturated with total inefficiency. As we see it, no one benefits in the long run from the prolongation of these cases and the related effects of duplication of litigation costs and extra consumption of court time. Indeed, all litigants before this Court will suffer. This fact has already been recognized by the Administrative Office of the United States Courts which has succinctly described the backlog of longshoremen cases in our District as "alarming". By adopting the shipowners' present proposal the backlog could become totally unmanageable.

III.

To explain the policy considerations for our ruling on the consolidation request, we felt that it was particularly essential to note that the shipowners' present motions would expand significantly our *present* backlog and calendaring problems; yet candor requires that we publicly note our recognition that in the near future a more basic policy decision will have to be made by the Congress of the United States to answer the long range problems—that is either (1) the Longshoremen's and Harbor Workers' Act, 44 Stat. 1424, Title 36 U.S.C. § 901 et seq. must be amended to eliminate longshoreman cases from the United States

---

8. We recognize that in a few instances this procedure may be required where there is consolidation of civil claims with federal tort claims where the Government is a defendant. As a practical matter, however, such instances are rare. Of the 1066 cases on this Court's present Part I trial docket the Government is a defendant in only four, whereas longshoremen cases account for 342 of the total.

District Courts, or (2) our resources must be significantly expanded including the addition of more Judges, supporting personnel, court rooms and other related facilities if we are to cope with the ascending tide of longshoreman litigation in our Court and in approximately four other United States District Courts.

To understand these long range alternatives which must ultimately be faced, one must have some historical perspective from at least 1946 when there occurred the first breach in the dike which made possible the subsequent flood of longshoreman litigation. Last term, the United States Supreme Court described the origin by noting that in 1946 Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, " * * * extended the doctrine of unseaworthiness to longshoremen, even though the longshoreman was not a member of the crew, and in spite of the fact that the longshoreman was entitled to compensation benefits under the Longshoremen's and Harbor Workers' Act." Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 733, n. 3, 87 S.Ct. 1419, 1421, 18 L.Ed.2d 488. The Supreme Court further noted that:

> Subsequent decisions in line with the general concepts put forth by this Court have read *Sieracki* expansively, and a wide range of maritime employees have been granted the benefits of the unseaworthiness doctrine. Carpenters (Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143); electricians (Feinman v. A. H. Bull S. S. Co., 3 Cir., 216 F.2d 393); shipcleaners (Torres v. The Kastor, 2 Cir., 227 F.2d 664 and Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784); repairmen (Read v. United States, 3 Cir., 201 F.2d 758); and riggers (Amerocean S. S. Co. v. Copp, 9 Cir., 245 F.2d 291), who performed jobs formerly done by seamen, have recovered from shipowners on the seaworthiness doctrine. See 75 Yale L. J. 1174, 1183.

87 S.Ct. at 1421–1422, n. 4.

Perhaps it is not without significance that many of the Courts which now have the longest median time interval for termination of trials are the Courts which have a high percentage of longshoremen cases. Cf., Records of Administrative Office of the United States Courts as to Southern District of New York, Eastern District of Pennsylvania, Eastern District of Louisiana.

*There is complete unanimity among the Judges of our Court in that we would welcome an inquiry by Congress for a re-evaluation of the issue as to whether the Longshoremen's and Harbor Workers' Act should be amended so that the latter would be the exclusive remedy and thus bar actions between the longhoremen and shipowners; and if there can be no congressional relief for this historical anachronism, whereby longshoremen who are not seamen nevertheless get rights as if they were seamen, then there must be additional judges and facilities for those "longshoremen federal courts" which are struggling to diminish the delays in civil trials.* If there is such an inquiry, several questions should be asked: (1) Do longshoremen (in contrast to their lawyers) generally come out with better financial results by reason of this duality of litigation than they would if they had somewhat increased benefits and the statute was truly exclusive? (2) Is there any reason why there could not be broad samplings of many of the past longshoremen cases filed in our courts and compare those results with the results which would accrue under alternative systems? Certainly physical and social scientists have developed the skills to take random samplings of data and make careful assessments of past results and with such results make recommendations for future courses of action. There is probably no more conjecture in such an inquiry than that which we hear daily when the medical experts of longshoremen and shipping companies make prognoses for the back injuries which occur incessantly on the waterfront. (3) Of course, if such an amendment were

passed, unfortunately it would decrease a substantial source of revenue for, relatively few, lawyers. But is there merit in first making an evaluation as to whether the *litigants* indeed benefit if we are to have the court house door open for such an abundance of litigation which takes such a heavy proportion of the Courts time and resources.[9]

## IV.

The statistical considerations outlined above thus make clear that the bringing of separate admiralty actions for indemnity by the shipowners, a practice only recently sanctioned in this Circuit in Ellerman Lines, Ltd. v. Atlantic and Gulf Stevedores, supra, and a practice which is concededly merely a tactical device of the shipowners intended to avoid a jury trial of the indemnity issues, see *Close*, supra, 44 F.R.D. p. 409, can contribute substantially to the backlog of litigation in this Court. Accordingly, to grant the shipowners' motions for consolidation here, without requiring a jury trial, would not only have the prejudicial effects upon the individual party-litigants noted supra, pp. 414–415, but would also encourage a practice which unnecessarily contributes to the calendar problems of this Court.

Finally, it must be re-emphasized that our decision means that in all future similar actions where there is a motion for consolidation, by either party, it will be denied unless all parties agree that in the consolidated action all of the factual issues, except that of the shipowners' counsel fees, will be tried to the same jury. Of course, if there is a timely motion for jury trial the Court will follow the procedure outlined in *Close*. See, f. n. 2, supra.

## SUPPLEMENTAL ORDER

AND NOW, this 21st day of June, 1968, upon consideration of various petitions for re-hearing and post-judgment motions relating to the Orders entered by this Court in the above-captioned cases on February 15, 1968, it is hereby ORDERED that:

Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, and in accordance with the Opinions entered by this Court in the above-captioned cases on February 15, 1968, Civil Action Nos. 38765, 36210, 38670, 39195, 36819, 38769, 36410, 37344, and 37345, and the related Admiralty Action Nos. 41 of 1966, 507 of 1966, 367 of 1966, 577 of 1966, 497 of 1966, 469 of 1966, 135 of 1966, 415 of 1966, and 579 of 1966, are DELETED from the Order entered on February 15, 1968, in Turner v. Transportacion, Civil Action No. 37221, et al., and are ADDED to those cases covered by the Order entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al., D.C., 44 F.R.D. 398;

Pursuant to a motion made under Rule 60(a) of the Federal Rules of Civil Procedure by American Export Isbrandstsen Lines, Inc., shipowners in these actions, Civil Action Nos. 38125 and 42207 are DELETED from the Order entered on February 15, 1968, in Turner v. Transportacion, Civil Action No. 37221, et al.;

Pursuant to petitions for rehearing or, in the alternative, motions to amend under Rule 59(e) of the Federal Rules of Civil Procedure, made by certain stevedoring companies named as third-party defendants in certain of the cases covered by the Order entered on February 15, 1968, in Turner v. Transportacion, Civil Action No. 37221, et al, that Order is AMENDED to include the following statement:

The Court is of the opinion that this Order involves controlling questions of law as to which there is a substantial ground for differences of opinion and

---

9. The Administrative Office has estimated that exclusive of courtroom and office facilities the cost for adding each additional Judge is approximately $100,000 the first year and $80,000 thereafter, and

in addition there is the heavy cost incurred for the compensation of large jury panels so that there will be adequate jurors for jury selection in each case.

that an immediate appeal from this Order, as authorized by 28 U.S.C. § 1292(b), may materially advance the ultimate termination of this litigation,

and the operation of this amended Order upon any case in which an appeal is taken is STAYED until ten days after the United States Court of Appeals for the Third Circuit has decided an application by petitioning third-party defendants for permission to take an interlocutory appeal under Title 28 U.S.C. § 1292 (b), and, if such application is allowed, the operation of this amended Order as to such appealed case is STAYED until the final determination of such appeal;

Pursuant to motions made under Rule 60(a) of the Federal Rules of Civil Procedure by Farrell Lines, Inc. and Prudential Lines, Inc., shipowners in these actions, Civil Action No. 38699 and Admiralty Action No. 31 of 1966, and Civil Action No. 40016 and Admiralty Action No. 525 of 1966, respectively, are DELETED from the Order entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al.;

Pursuant to motions made under Rule 42(a) of the Federal Rules of Civil Procedure by Farrell Lines, Inc. and Prudential Lines, Inc., shipowners in these actions, Civil Action No. 38699 is CONSOLIDATED for trial with Admiralty Action No. 31 of 1966, and Civil Action No. 40016 is CONSOLIDATED for trial with Admiralty Action No. 525 of 1966, and in both consolidated trials a jury trial will be AWARDED on all issues of fact between the parties except the issues of counsel fees in accordance with the Opinion entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al.;

Pursuant to motions to amend under Rule 59(e) of the Federal Rules of Civil Procedure made by Prudential Lines, Inc. and Farrell Lines, Inc., defendants and third-party plaintiffs in Civil Action No. 40016 and Admiralty Action No. 525 of 1966, and in Civil Action No. 38699 and Admiralty Action No. 31 of 1966, respec-

tively, the Order entered on February 15, 1968, in Close v. Calmar, Civil Action No. 37642, et al., is AMENDED to include the following statement:

The Court is of the opinion that this Order involves controlling questions of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from this Order, as authorized by 28 U.S.C. § 1292 (b), may materially advance the ultimate termination of this litigation,

and the operation of this amended Order upon any case in which an appeal is taken is STAYED until ten days after the United States Court of Appeals for the Third Circuit has decided an application by these petitioners for permission to take an interlocutory appeal under Title 28 U.S.C. § 1292(b) and, if such application is allowed, the operation of this amended Order as to such appealed case is STAYED until the final determination of such appeal.