**24**

CEDARS–SINAI MEDICAL
CENTER, Plaintiff,

v.

REVLON, INC. and Armour
Pharmaceutical Company,
Defendants.

CEDARS–SINAI MEDICAL
CENTER, Plaintiff,

v.

RORER GROUP, INC., Pantry Pride,
Inc., Revlon, Inc., and Armour
Pharmaceutical Company, Defendants.

Civ. A. Nos. 85–178–JLL, 85–699–JLL.

United States District Court,
D. Delaware.

June 11, 1986.

Richard D. Levin, of Connolly, Bove, Lodge & Hutz, Wilmington, Del., and Coe A. Bloomberg, of Lyon & Lyon, Los Angeles, Cal., of counsel, for plaintiff.

Michael D. Goldman and Gregory A. Inskip, of Potter, Anderson & Corroon, Wilmington, Del., and Eugene Moroz, Kurt E. Richter, William S. Feiler and Michael A. Dougherty, of Morgan, Finnegan, Pine, Foley & Lee, New York City, of counsel, for defendants Armour Pharmaceutical Co., Revlon, Inc., and Pantry Pride, Inc.

Michael D. Goldman and Gregory A. Inskip, of Potter, Anderson & Corroon, Wilmington, Del., and Ernest B. Lipscomb III, Tuckahoe, N.Y., of counsel, for defendant Rorer Group, Inc.

## OPINION

LATCHUM, Senior District Judge.

This Court has been faced with an intricate maze of motions which has taken some time to untangle. This opinion addresses only a small portion of these motions which are, however, of considerable significance to the parties. The plaintiff, Cedars-Sinai Medical Center ("Cedars-Sinai"), a California corporation, has filed two actions in this Court. The first action ("C.A. No. 85–178") was filed on March 21, 1985 against two defendants, Revlon, Inc. ("Revlon"), and Armour Pharmaceutical Company ("Armour"), both Delaware corporations. In that complaint, Cedars-Sinai alleges infringement by those defendants of its Patent No. 4,456,590 ("the '590 patent") in which it claims a method of eliminating hepatitis-carrying microorganisms from a lyophilized, or "freeze-dried," bloodclotting agent through heat treatment, and requests injunctive relief and damages. (Docket Item ["D.I."] 1, ¶ 7 [C.A. No. 85–178].) In the second action, filed on December 3, 1985, Cedars-Sinai alleges infringement of a closely related patent, Patent No. 4,556,558 ("the '558 patent") against two additional defendants, Rorer Group, Inc. ("Rorer"), a Pennsylvania corporation, and Pantry Pride, Inc. ("Pantry Pride"), a Delaware corporation, in addition to Revlon and Arm-

our, the defendants in the original suit.[1] (D.I. 1 [C.A. No. 85–699].) In the midst of a flurry of various discovery and sundry other motions, the Court will simultaneously dispose of two of the plaintiff's motions, which are logically intertwined with one another. The plaintiff has moved this Court to grant a jury demand on all issues in C.A. No. 85–178, the first suit (D.I. 67), the resolution of which will dispose of the motion of the defendants Armour and Revlon to strike the plaintiff's demand for a jury trial. (D.I. 61.) Second, the plaintiff has moved this Court to consolidate the two actions for a joint trial. (D.I.'s 71; 7.)

## I. FACTUAL BACKGROUND

On March 21, 1985, Cedars-Sinai, which provides medical services and conducts research and development, filed a complaint for injunctive relief and damages in this Court alleging infringement of the '590 patent. (D.I. 1, ¶ 7.)[2] The complaint did not demand a jury trial.

In their original answers, dated April 15, 1985, the defendants Revlon and Armour offered the following affirmative defense:

In filing and amending the patent applications ultimately resulting in said United States Letters Patent No. 4,456,590, plaintiff, on information and belief, did not exercise that degree of candor and full disclosure required of it in proceedings before the United States Patent and Trademark Office, such that said patent is invalid and unenforceable by reason thereof.

(D.I.'s 5 & 6, ¶ 10.) In its counterclaim (attached to its answer), Armour requested the Court to declare the '590 patent invalid, void, unenforceable, and not infringed by the defendant. (D.I. 5, ¶ 1.)

On April 30, 1985, the plaintiff filed a reply to Armour's counterclaim. (D.I. 14.) In paragraph 6, the plaintiff recited the fact that it had moved to strike paragraph 10 of the defendants' answers and counterclaim. (Id. at ¶ 6.) On May 6, 1985, the plaintiff filed its motion for an order striking paragraph 10 of Revlon's answer and paragraph 10 of Armour's answer and counterclaim on the grounds that the defendants had failed as a matter of law to allege fraud on the Patent Office with the particularity required by Fed.R.Civ.P. 9(b). (D.I. 15.) In its brief on this issue, Cedars-Sinai contended that the defendants' assertion of fraud was conclusory and did not meet the standards of particularity in the case law. (D.I. 13 at 5.) Specifically, the defendants' averments "fail(ed) to state any facts underlying their assertion of fraud on the Patent Office." (Id. at 6.)

In response to the plaintiff's claim that the defendants' answer and counterclaim, paragraph 10, did not meet the particularity requirements of Fed.R.Civ.P. 9(b), the two defendants moved to amend their answers. (D.I. 17.) After receiving considerable argument from both sides, both by written brief and by oral argument, the Court granted the defendants' motion to amend their answers. (D.I. 41.) Para-

---

1. In both cases jurisdiction arises under 28 U.S.C. § 1338(a) and venue is based on 28 U.S.C. § 1400(b), because the defendants Pantry Pride, Revlon, and Armour reside in this district and Rorer has a regular and established place of business in this district. (D.I. 86, ¶¶ 4–7 [C.A. No. 85–178].) Rorer had previously disputed jurisdiction (D.I. 32 [C.A. No. 85–699] ), but has since waived its objection. (D.I. 119 [C.A. No. 85–699].)

The Court will henceforth identify the cases to which docket items belong by their order of appearance in a citation when separated by a semicolon. If citation to both cases is necessary, the first docket item number will refer to C.A. No. 85–178 and the second to C.A. No.

85–699. A single docket item number in a citation will refer to C.A. No. 85–178.

Cedars-Sinai has moved to add Pantry Pride and Rorer as defendants in the first action. (D.I. 86.) The Court will reserve consideration of this motion until it has disposed of the motions of Revlon and Pantry Pride to dismiss, for which briefing is yet to be completed. This deferment should not affect the disposition of the present motions since the alleged main infringer, Armour, is a defendant in both actions.

2. Patent No. 4,456,590, entitled "HEAT TREATMENT OF LYOPHILIZED BLOOD CLOTTING FACTOR VIII CONCENTRATE," was granted on June 26, 1984, to Dr. Alan A. Rubinstein (D.I. 1, ¶ 7) who assigned his title to the plaintiff.

graph 10 of the amended answers reads as follows:

10. In filing and amending the patent applications ultimately resulting in said United States Letters Patent No. 4,456,-590, plaintiff did not exercise that degree of candor and full disclosure required of it in proceedings before the United States Patent and Trademark Office, such that said patent is invalid and unenforceable by reason thereof; in that plaintiff failed to disclose to the patent examiners pertinent information, known to it, that other workers in the field of the alleged invention, including William R. Thomas of Baxter-Travenol, Laboratories, Inc., previously or contemporaneously had discovered independently the central concept of the patent claims which plaintiff alleged to be lacking in the prior art, namely, that the viability of a heat-labile blood plasma fraction hosting a hepatitis virus can be maintained during the application of virus-eliminating heat; and further in that plaintiff is presenting arguments to the patent examiner misrepresented the teachings of the prior art, including the teachings of the 1969 Rosenberg, et al. publication of record.

(D.I. 17.) [3]

The plaintiffs on September 23, 1985, ten days following the filing of these amended answers, for the first time filed a demand for a jury trial as to all issues in this case. (D.I. 49.) The defendants countered this motion with a motion to strike the plaintiff's demand for a jury trial on the ground that the plaintiff had waived any right to a trial by jury by its failure to serve a timely demand in conformity with Fed.R.Civ.P. 38(b) and 38(d). (D.I. 61.) Plaintiff filed its motion for an order granting a jury trial on November 22, 1985. (D.I. 67.)

On November 5, 1985, Pantry Pride and Revlon entered into a merger agreement, effective on December 26, 1985, in which

Revlon became a wholly owned subsidiary of intermediate subsidiaries of Pantry Pride. Armour continued to be a wholly owned subsidiary of Revlon. On November 27, 1985, Pantry Pride and Rorer entered into an agreement which provided that Pantry Pride would sell or cause to be sold to Rorer certain of Revlon's pharmaceuticals operations. The sale of Armour to Rorer took place on January 7, 1986.

In the midst of these transactions, the plaintiff filed a complaint on December 3, 1985 in C.A. No. 85–699 against the same defendants named in C.A. No. 85–178 but also including additional defendants, Rorer and Pantry Pride, alleging that the defendants had infringed the '558 patent.[4] The plaintiff further alleged that the agreement of Pantry Pride to sell Armour to Rorer created a threatened infringement of the '558 patent by Rorer. The plaintiff therefore sought relief under the Declaratory Judgments Act, 28 U.S.C. § 2201. The plaintiff requested the Court to issue a preliminary and permanent injunction restraining the defendants from infringement of the '558 patent and for damages caused by the infringement. Cedars-Sinai made a timely general demand for a jury trial on all issues in its complaint in the second action C.A. No. 85–699. This Court has been assigned this case ("C.A. No. 85–699") in addition to the case presently under consideration.

On January 29, 1986, the plaintiff filed a motion for leave to file a supplemental complaint in C.A. No. 85–178 to add Pantry Pride and Rorer as additional defendants and demanded a jury trial on all issues. In the supplemental complaint, the additional defendants are alleged to have infringed patent '590. Pantry Pride, in addition to Revlon and Armour, is accused of actively inducing the infringement by Rorer of the '590 patent in violation of 35 U.S.C. § 271(b). *Id.* at ¶ 10. In addition, the supplemental complaint alleges that the agree-

---

3. The Court granted the defendants' motion to amend their answers on August 27, 1985. (D.I. 41.) The defendants filed their amended answers on September 13, 1985. (D.I.'s 46 & 47.)

4. Patent '558 covered an invention entitled "TREATMENT OF FACTOR VIII CONCENTRATE TO MINIMIZE THE EFFECT OF UNDESIRABLE MICROORGANISMS."

ment of Pantry Pride to sell Armour to Rorer creates a threatened infringement of the patent by Rorer for which the plaintiff seeks declaratory relief. *Id.* at ¶ 11. Pantry Pride opposes this motion to add it as a defendant.

Finally, on December 10, 1985, Cedars-Sinai moved to consolidate the two actions. (D.I. 71.)

Although the present motions do not directly concern the merits of the patent infringement actions, a certain amount of detail concerning the two patents must be briefly related in order to adequately address the procedural issues raised by these motions. The Court here is only attempting to lay out the disputed issues of fact in order to untangle in a reasonably manageable fashion the issues of consolidation and demand for a jury trial. Although for their own purposes the parties dispute the degree of commonality of the two patents, the patents indisputably are derived from the same technology. Each patent will be discussed in turn.

The first infringement suit, C.A. No. 85–178, names Dr. Alan Rubinstein as the inventor and was issued upon a May 13, 1982 application. Patent '590 claims a method of eliminating hepatitis viruses from lyophilized blood clotting Factor VIII by heat treating the clotting factor to render the viruses non-infectious. Patent '590 was granted on an application as a continuation-in-part ("CIP") of an application having an effective filing date of November 12, 1980. A factual dispute which must remain unresolved until trial is whether the 1982 CIP application contains significant new de-

scriptive matter not found in the 1980 application such that the effective filing date would not be November 12, 1980, but May 13, 1982, the date the patent issued. Resolution of this issue is important in determining which prior art activities apply in considering the novelty requirement of 35 U.S.C. § 102.

The disclosure and claims of the '590 patent describe a two-step process: (1) lyophilizing Factor VIII concentrate; and (2) heat treating the lyophilized blood clotting Factor VIII concentrate at least at about 60° C. for a sufficient time to render the hepatitis virus in the clotting factor non-infectious.

The '558 patent expands the disclosure and claims of the '590 patent to include minimizing the effect of other undesirable microorganisms, including specific viruses associated with the CMV, AIDS, and Epstein-Barr diseases. The two patents involve essentially the same process of lyophilizing Factor VIII concentrate. In fact, the Patent and Trademark Office in examining Dr. Rubinstein's application for the '558 patent ruled that the '558 patent had the same concept as the '590 patent. Claims 1 through 3 of both patents, and claim 4 of patent '590 and claim 8 of patent '558, which describe the technological process, are virtually identical. Patent '558 has an additional seven claims which cover the technological process described in claim 4 of patent '590 and the blood clotting Factor VIII concentrate as applied to specific viruses;[5] patent '590 includes only four claims, which describe only the technological process.

---

**5.** Claims 1 through 3 of patent '590 read as follows. Language which is different in the two patents is underscored and the corresponding version of patent '558 is bracketed:

1. A method for treating blood clotting Factor VIII concentrate in order to minimize the effect of *any hepatitis virus* [undesirable virus microorganisms] present in the blood clotting Factor VIII concentrate, said method comprising the steps of:

lyophilizing the blood clotting Factor VIII concentrate, followed by;

heating the lyophilized blood clotting Factor VIII concentrate at a predetermined temperature of at least about 60° C. for a period of time sufficient to *render hepatitis*

*virus present in the blood clotting Factor VIII concentrate non-infectious* [minimize the effect of any undesirable virus microorganisms present in said human blood clotting Factor VIII concentrate], said heating generally decreasing as said predetermined temperature is increased.

2. The method claimed in claim 1 wherein said predetermined temperature is between about 60° C. and about 100° C.

3. The method claimed in claim 1 wherein said predetermined temperature is between about 60° C. [100° C.] and about 125° C.

Claim 4 of patent '558 virtually repeats Claim 1 of the same patent, only replacing the word

## II. ANALYSIS

### A. *Motions To Consolidate And For A Jury Trial On All Issues In Both Cases.*

The plaintiff contends that it has a right to a jury trial on all issues in both cases. Furthermore, the plaintiff has moved to consolidate the two cases. The two motions are therefore highly intertwined and must be discussed together.

The Court will first examine, as an issue separate from the other factors in this case, the plaintiff's contention that in the first case (C.A. No. 85–178) it has a right to a jury trial or alternatively that the Court in its discretion should grant it a trial by jury. For the reasons stated below, the Court has determined that the plaintiff's demand for a jury trial should be denied, weighing the factors in the first case alone.

### 1. Motion For A Jury Trial In C.A. No. 85–178

The plaintiff has moved for a jury trial on all issues in C.A. No. 85–178. (D.I. 67.)

It argues that under Rule 38(b), it should be granted a jury trial "as of right" on the issue of inequitable conduct and that under Rule 39(b) the Court should exercise its discretion and grant a jury trial on all issues in this case.

The procedure required for making a demand for a jury trial as of right is covered explicitly in the Federal Rules of Civil Procedure. The moving party must make a demand for a jury trial in writing "not later than 10 days after the service of the last pleading directed to such issue." Fed.R. Civ.P. 38(b).[6] Thus, the Court must first determine when the "last pleading" was filed and whether the plaintiff made a demand for a jury trial within ten days of its filing.

The defendants in the first action—Revlon and Armour—filed their amended answers and counterclaim on September 13, 1985. The plaintiff filed its demand for a jury trial on September 23, 1985, ten days after the filing of this pleading. There-

---

lyophilizing(ed) with the word dehydrating(ed). Claim 4 of patent '590 reads as follows:

4. The method claimed in claim 1 further comprising: adding sterile water to the lyophilized blood Factor VIII concentrate following completion of said heating step until solubilization of the lyophilized blood clotting Factor VIII concentrate is achieved.

This process is in substance incorporated in claim 8 of patent '558. Claim 8 repeats claim 1 of patent '558 *in toto,* then adds the following language: "... and reconstituting the heated lyophilized blood clotting Factor VIII by increasing the moisture content thereof to a predetermined level irrespective of the amount of moisture removed when lyophilizing the blood clotting Factor VIII, said predetermined level being sufficient to completely solubilize the heated, lyophilized blood clotting Factor VIII."

Claims 5–7 of patent '558 merely describe the technological process already described in claim 1 of patent '558 and specifically claiming this process to inactivate (rather than simply "minimize," the word employed throughout claim 1) ·AIDS, CMV, and Epstein-Barr viruses. Claims 9–12 then describe the heat-treated human blood Factor VIII concentrate and claim that product as effective against these specific diseases. (D.I. 31A at Exs. A and B [C.A. No. 85–699].)

**6.** Rule 38 reads as follows:

**Rule 38. Jury Trial of Right**

(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

(c) Same: Specification of Issues. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. If he has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

(d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

fore, the plaintiff has filed a demand for a jury trial within the ten day period required by Rule 38(b).

■ However, the "last pleading" specified in Rule 38(b) must be directed to a *new* issue for which the party is demanding a jury trial. Amended pleadings which concern "the same general issues" as the previous pleadings do not raise "new issues" under Fed.R.Civ.P. 38(b), even if they differ from the earlier pleadings in some particulars. *Walton v. Eaton Corp.,* 563 F.2d 66, 72 (3d Cir.1977); *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2nd Cir.1973). A jury trial is revived in an action only if the amendments of the original pleading, at the very least, "change the issues." *Lanza,* 479 F.2d at 1310.

■ The plaintiff adopts several arguments to support its demand for a jury trial in C.A. No. 85–178. First, the plaintiff correctly states that the right to a jury trial is a fundamental right, and that courts should "indulge every reasonable presumption against waiver of such right." (D.I. 68 at 5.) *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). Although unquestionably important, this policy nevertheless must be viewed within the context of the clear mandates of the Federal Rules of Civil Procedure.

The plaintiff's substantive argument is that the facts underlying the issue of inequitable conduct before the Patent Office were not articulated until the defendants' amended answers. (D.I. 68 at 7.) The pleadings to that time therefore "set forth no facts by which it could be determined that a jury question might exist." (*Id.*) The plaintiff further argues that this particular issue was not "framed" until the defendants' amended answers. (*Id.*)

The plaintiff attempts to distinguish *Lanza,* in which the court held that the demand for a jury trial had been waived. There, the moving party was put on notice of the underlying facts and basic legal the-ory upon which the plaintiff sought relief by the original round of pleadings. *Lanza,* 479 F.2d at 1310. Cedars-Sinai contends that in C.A. No. 85–178 it had no "inkling" of the factual basis of the defendants' inequitable conduct charges. (D.I. 68 at 8.)[7]

■ There is no question that the plaintiff was fully put on notice by the original round of pleadings in this case. The defendants' amended answers merely added detail to the claim in their original answers that the plaintiff had acted fraudulently before the patent examiner in obtaining a patent for the '590 patent. The defendants' charge that the "plaintiff did not exercise that degree of candor and full disclosure required of it in proceedings before the United States Patent and Trademark Office, such that said patent is invalid and unenforceable by reason thereof" appears in the original as well as amended answers. The "general area of dispute"—whether such fraud had occurred—did not change, although the amended answers pleaded additional facts which had not been alleged in the original pleading. *Walton,* 563 F.2d at 73 (3d Cir.1977).

The plaintiff also cites *Dasho v. Susquehanna Corp.,* 461 F.2d 11, 22 (7th Cir.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972), for the proposition that an issue is not "raised" until it is completely and finally *framed* by the pleadings. While such language certainly appears in that opinion, the court specifically emphasized that amendments which do not really change the issues do not revive a right that has been waived. (*Id.*) Further, in *Dasho,* the plaintiffs' motions to strike answers of the defendants raised substantial questions which showed that the issues had not yet been clearly identified. In contrast, in this case the issue of inequitable conduct had clearly been identified at the outset of the litigation. The only question was the factual details of the defendants' claim of inequitable conduct. The same can be said of *Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045, 1050 (9th Cir.1974),

7. The plaintiff correctly notes that the Court ordered the original inequitable conduct allega-tions be stricken as fatally defective. (D.I. 68 at 3.)

also cited by the plaintiff in its brief. In *Trixler,* the court ruled against the movant's demand for a jury trial in language which weighs against plaintiff's argument here: "[H]aving waived its right to a jury trial on its 5th claim, the appellant is not entitled to a jury trial on a more detailed statement of the same charge in the 6th and 7th claims." (D.I. 68 at 1050.)

Thus, the plaintiff has not met the requirements of Rule 38(b) because its demand for a jury trial on September 23, 1985, came more than five months following the filing of the defendants' answers and counterclaims on April 15, 1985, which finalized the issues in C.A. No. 85–178.

■ The plaintiff's last argument is directed to Rule 39(b) pursuant to which it requests a jury trial as to all issues in C.A. No. 85–178. Although a party has failed to demand a jury trial in an action or has waived this right, the court may in its discretion, upon motion, order a jury trial on any or all issues. Fed.R.Civ.P. 39(b).[8] The plaintiff contends that the issue of inequitable conduct raised by the defendants promises to be one, if not the central, issue in this case. (D.I. 68.) Since the primary validity issue is the defendants' claim of obviousness under 35 U.S.C. § 103, and the questions "permeating the inequitable conduct issue also encompass the obviousness issue," separate trials on these issues would be duplicative. (*Id.* at 10–11.) The plaintiff also argues that the defendants would not be prejudiced by a jury trial on all the issues, and that the burden and expense to both parties could be reduced by a single trial. (*Id.* at 11.)

Again, the Court finds that some of the same policy considerations weighing against the plaintiff's motion under Rule 38(b) exist with respect to its motion under rule 39(b). The plaintiff had ample time at the onset of this litigation to raise a demand for a jury trial on any or all the issues in C.A. No. 85–178. The issues had been clearly stated in the original pleadings. The Court is initially reluctant to exercise its discretion to grant a jury trial on any of these issues since the plaintiff has neglected to take advantage of the clear mandates of the Federal Rules in demanding a jury trial. "[M]ere inadvertence, oversight or lack of diligence on the part of counsel is not sufficient ground to evoke relief under Rule 39(b)." *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 610 F.Supp. 1319, 1328 (D.Del.1985) (quoting *Biesenkamp v. Atlantic Richfield Co.,* 70 F.R.D. 365, 366 (E.D.Pa.1976) ).

### 2. Motion For Consolidation And For Jury Trial On All Issues

Thus, on these factors alone, the Court would deny the plaintiff's motion for a jury trial in C.A. No. 85–178. However, the plaintiff has filed a second action alleging infringement of a closely related patent and moved for consolidation for all purposes including trial. As a preliminary inquiry, the Court must determine whether the plaintiff's filing of the second action and its motion to consolidate are merely a procedural ploy by the plaintiff to gain what it lost through its own fault.

The plaintiff has filed a meritorious, timely claim in C.A. No. 85–699. The new patent issued only on December 3, 1985, and the claim of infringement was filed immediately thereafter. Of course, the plaintiff's motion for a jury trial in C.A. No. 85–178 may (or may not) be furthered by its motion to consolidate this case with C.A. No. 85–699, but the Court does not find the actual filing of the latter case, as well as the motion to consolidate, to be founded *solely* on a strategy of sidestepping an adverse determination by the Court on the plaintiff's motion under Rules 38 and 39 for a jury trial in the first case. The motion for consolidation has merit in-

---

8. Rule 39(b) reads as follows:
 **Rule 39. Trial by Jury or by the Court**
 \* \* \* \* \* \*
 (b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.
 Fed.R.Civ.P. 39(b).

**32**

dependent of the advancement of such an interest.

■ The trial court has discretion under Fed.R.Civ.P. 42(a) whether to consolidate actions for trial involving "a common question of law or fact" which are pending before the court and "may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." *Id.*[9] *Shump v. Balka,* 574 F.2d 1341, 1344 (10th Cir.1978); *Rohm & Haas Co. v. Mobil Oil Corp.,* 525 F.Supp. 1298 (D.Del.1981); *LaChemise Lacoste v. Alligator Co., Inc.,* 60 F.R.D. 164, 175 (D.Del. 1973). However, the mere existence of these common issues, although a prerequisite to consolidation, does not mandate a joint trial. The court must balance the savings of time and effort gained from consolidation against the inconvenience, delay, or expense that might result from simultaneous disposition of the separate actions. *Rohm & Haas Co.,* 525 F.Supp. at 1309; *Continental Bank and Trust Co. v. Platzer,* 304 F.Supp. 228, 229–30 (S.D.Tex. 1969); 9 Wright & Miller, *Federal Practice & Procedure: Civil* § 2383 at 259–60 (1971).

This litigation presents an unusual set of circumstances. If the Court holds fast to its initial determination that there should be no jury trial in C.A. No. 85–178, then— whether or not the two cases are ultimately consolidated for purposes of a joint trial— two different triers of fact will be engaged in deciding, at least to some extent, *common issues of fact* and in applying *common rules of law.* The defendants dispute the degree of commonality between the two cases, conceding however, that *some* of the issues do share a common factual and legal foundation. The defendants also raise the fear of jury confusion. (D.I. 82 at 6–8.) Most significant is the direct conflict with the plaintiff's Seventh Amendment right to a jury trial which separate jury and non-jury trials would create. Ultimately, this conflict convinces the Court that the cases should be consolidated and that the plaintiff should be granted a joint jury trial in both cases.

The federal courts have vigilantly safeguarded the constitutional right of a litigant to have a single jury decide *factual* questions common to separate cases. The Seventh Amendment to the United States Constitution provides:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. art. VII.

■ The prohibition, arising directly from the mandates of the Seventh Amendment, is well-established against having two juries decide the same essential issues. *Gasoline Products v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 587 F.Supp. 1112, 1116–17 (D.Del.1984). Here, similar reasoning demonstrates that the plaintiff's Seventh Amendment right is in even more danger of compromise, where some of the factual determinations of the jury relating to patent '558 would surely be the subject of examination in a *non-jury* trial by the Court on the '590 patent. Where a jury is the trier of fact on common issues of fact, it should be the *sole* determiner of those issues. Only consolidation, before a single jury, at least on the issues of validity, enforceability, and infringement, would protect the plaintiff's constitutional rights in this litigation.

■ Even according the fullest possible weight to the defendants' argument that

---

**9.** Rule 42(a) reads:

**Rule 42. Consolidation; separate trials.**
a. Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
Fed.R.Civ.P. 42(a).

the two cases contain quite different questions of law and fact, it is undisputed that some, even a substantial, number of the issues are common to the two cases. In both actions, the plaintiff alleges patent infringement for inventions which are closely related. Essentially, patent '558 employs the identical technological process of patent '590 and only extends the claims of patent '590 to include viruses other than hepatitis. Both employ the lyophilization of Factor VIII and the subsequent heat treatment of the lyophilized blood clotting factor at at least 60° C. to inactivate the viruses. Claims 1 through 3 of both patents, and claim 4 of patent '590 and claim 8 of patent '558, which describe this process, are virtually identical. The defendants claim that the factual issues of patent '558 are significantly different. Because there are different effective filing dates, different prior art issues arise. (D.I. 82 at 10.) However, the two patents were presented before the same patent examiner, the inventions were by the same inventor, and, although the filing dates of the two patents may differ, much of the prior art will be the same for the two patents, at least with respect to the technological processes at issue.

Moreover, one of the defendants' strongest defenses to the charge of infringement is their claim that their accused product does not employ the same elements that constitute both of the patents. The defendants contend that their products use stabilizers in the lyophilization process, whereas the record shows that both patents do not use stabilizers. This defense is common to both cases. (D.I. 105 at 2.) The Patent and Trademark Office stated that patent '558 employs the same concept as patent '590, thus requiring a terminal disclaimer of the inventor, Dr. Rubinstein. (*Id.* at 4.)

 Furthermore, the high probability of collateral estoppel in this case, at least on the issues of validity, infringement, and enforceability, favors consolidation of the two cases before a single jury. A court must make every effort to ensure that a

party's right to trial by jury is not weakened or eliminated altogether by a prior determination of common issues in a non-jury trial, by collateral estoppel. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959). Under the doctrine of collateral estoppel, a decision by a court on an issue of fact or law that was necessary to the judgment may preclude relitigation of that issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The doctrine applies when: (1) the issue decided in the prior litigation is identical to the issue here; (2) the prior litigation resulted in a final judgment on the merits; (3) the party against whom the estoppel is asserted is a party, or in privity with a party, to the prior proceeding; and (4) that party had a full and fair opportunity to present the claim in the prior proceeding. *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974); *Amalgamated Cotton Garment v. J.B.C. Co. of Madera, Inc.*, 608 F.Supp. 158, 162–63 (W.D.Pa.1984). The fact that here the same parties [10] are litigants in both actions with common issues of law and fact demonstrates that collateral estoppel would apply.

A possible alternative, of course, would be to try C.A. No. 85–699 first, where the jury trial is of right, then have the Court try C.A. No. 85–178. Although estoppel would occur, it would not directly infringe on the plaintiff's constitutional right to a jury trial. However, when one of the cases is a jury trial, and common issues of law and fact exist, a single jury should be the same trier of fact. *Gasoline Products*, 283 U.S. at 500, 51 S.Ct. at 515.

The conjunction of jury and non-jury trials often occurs in admiralty cases. The courts' rationales in such cases are applicable to this litigation. In *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83

**10.** *See supra* note 1.

S.Ct. 1646, 10 L.Ed.2d 720 (1963), the Supreme Court of the United States was confronted with a case involving the joint trial of a claim in admiralty, where there is no constitutional right to a trial by jury and a Jones Act claim, in which a jury trial is granted by statute. The factual foundation for these separate claims arose from the same accident. Justice Black held that only one trier of fact should be used for the trial of what is essentially one lawsuit. *Id.* at 21, 83 S.Ct. at 1650. The Court reasoned that "[r]equiring a seaman to split up his lawsuit, submitting part of it to a jury and part to a judge, unduly complicates and confuses a trial, creates difficulties in applying doctrines of *res judicata* and collateral estoppel, and can easily result in too much or too little recovery." *Id.* at 19, 83 S.Ct. at 1649.

Courts have extended the principle of *Fitzgerald* to cases even where some of the parties are different in consolidated cases, where the claims against one party carried a jury entitlement and the claims against another did not. *See Complaint of Berkley Curtis Bay Co.,* 569 F.Supp. 1491 (S.D.N.Y.), *aff'd,* 742 F.2d 1431 (2d Cir.1983) (referring to *Close v. Calmar Steamship Corp.,* 44 F.R.D. 398 (E.D.Pa.1968), *aff'd sub nom. Blake v. Farrell Lines, Inc.,* 417 F.2d 264 (3d Cir.1969) ). The Third Circuit announced in *Farrell Lines:*

> In special situations of trial consolidation of closely related actions or claims, one attended by a right to jury trial and the other not, a court may, in the interest of the efficient and expeditious administration of justice, require that both be submitted to a jury for decision upon the disputed factual issues.

*Farrell Lines,* 417 F.2d at 266.

Consolidation of the two trials is favored also because discovery in the first case is not far advanced. Most of the current motions have dealt with such preliminary matters as motions to compel, to dismiss, and for summary judgment. In either case, the inventor of both patents, Dr. Rubinstein, has yet to be fully deposed. In fact, discovery is proceeding in tandem because of consolidation by this Court of discovery in both cases. By the Magistrate's order of March 24, 1986 (D.I. 115), discovery as to Revlon, Rorer, and Pantry Pride was in fact stayed except for that addressing personal jurisdiction, pending disposition of the motions to dismiss. Discovery as to Armour has continued. Thus, there is no inherent delay that would arise in granting a motion to consolidate these cases for a joint trial.

The danger of jury confusion, although certainly present, is not of such magnitude as to seriously compete with the plaintiff's Seventh Amendment rights. The two patents share considerably more in common than they are separated by differences.

A judgment will be entered in accordance with this opinion.