On Application for Rehearing

BRYAN, Judge.
This court’s opinion of July 22, 2005, is withdrawn, and the following is substituted therefor.
Mary Mitchell Green, Jennie Mitchell Green, Willie Mitchell, Milton Mitchell, Jessie B. Mitchell, Ella Mitchell Cox, Debra Mitchell Chestang, and Fred E. Mitchell (“the Mitchell claimants”) appeal a final judgment approving a private sale of a 120-acre parcel of property in Clarke County (“the property”). We reverse and remand with instructions.
On July 23, 2001, the Mitchell claimants sued Maybon Daughtrey, Grady Goulds, Michael R. White, and Comer Pace in the Clarke Circuit Court. The Mitchell claimants, through a quiet-title claim, sought a determination that they owned the property and that the defendants did not own any interest in the property. In addition, the Mitchell claimants alleged claims of trespass and conversion against the defendants and sought damages and injunctive relief. The Mitchell claimants demanded a jury trial. (The Clarke Circuit Court assigned civil action number CV-01-182 to the case initiated by the Mitchell claim *342 ants’ complaint. Accordingly, for convenience, we will refer to that case as “case number 182.”)
None of the defendants named in the Mitchell claimants’ complaint answered the complaint or asserted a counterclaim in case number 182. However, two of those defendants, Maybon Daughtrey and Grady Goulds, joined three other people who claimed an interest in the property, Martha A. Daughtrey, John York, and Tiny Harmon, in filing a complaint for division of the property on October 22, 2001. (All five plaintiffs who filed the complaint for division will be referred to collectively as “the Daughtrey claimants.”) The Daugh-trey claimants named Mary Mitchell Green, one of the Mitchell claimants, as a defendant in their complaint for division. In addition, the Daughtrey claimants asserted their claim for division of the property against fictitiously named defendants described as “any and all other persons who may claim any right, title and interest in and to” the property, which necessarily included the other seven Mitchell claimants. The Daughtrey claimants also asserted their claim for division of the property against Michael R. White, one of the defendants named by the Mitchell claimants in case number 182. The Daughtrey claimants did not demand a jury trial. (The Clarke Circuit Court assigned civil action number CV-01-256 to the case initiated by the Daughtrey claimants’ complaint for division. Accordingly, for convenience, we will refer to that case as “case number 256.”)
On May 22, 2002, the Daughtrey claimants filed motions in both case number 182 and case number 256 seeking the consolidation of those cases “in order to determine the degree of ownership of each party.” As the ground for their motion, the Daughtrey claimants stated that “the two cases involve the same parties and the same parcel of real property.” On May 23, 2002, the trial court granted, without qualification, the Daughtrey claimants’ motions to consolidate.
On October 1, 2002, the Daughtrey claimants filed two motions bearing case number 182 only. In the first motion, the Daughtrey claimants sought the appointment of a guardian ad litem- to represent unknown persons and incompetent persons claiming an interest in the property. In the second motion, the Daughtrey claimants sought an order authorizing them to serve by publication “all other persons claiming any present, future contingent remainder, reversion or other interest in the lands which are the subject of this action.” Thus, the seven Mitchell claimants who had not been identified by name as defendants in the Daughtrey claimants’ complaint for division were among those whom the Daughtrey claimants sought to serve by publication. That same day, in separate written orders bearing case number 182 only, the trial court appointed the requested guardian ad litem and authorized the requested service by publication.[1]
Two named defendants, Michael R. White and Juanita Howard, filed answers to the Daughtrey claimants’ complaint for division bearing case number 256 only. The guardian ad litem filed an answer to the complaint for division bearing case number 182 only. The other persons named as defendants in the Daughtrey claimants’ complaint for division did not file answers.
Despite granting the Daughtrey claimants’ motions to consolidate case number *343 182 and case number 256 “in order to determine the degree of ownership of each party,” the trial court, acting ex mero motu, set case number 182 for a jury trial on March 31, 2003, and set case number 256 for a bench trial on May 13, 2003. Subsequently, the Mitchell claimants filed a motion titled “Motion to Continue and to Consolidate” bearing case number 182 only. The motion sought a continuance of the trial set for March 31, 2003, and consolidation of case numbers 182 and 256. On March 26, 2003, the trial court made and signed this handwritten notation on the motion:
“Motion to continue trial setting is granted.
“Motion to consolidate is granted for purposes of discovery & pretrial issues only. Cases are not consolidated for trial.”
(Emphasis in original.)
Maybon Daughtrey, Juanita Howard, and the guardian ad litem appeared for trial in case number 256 on May 13, 2003. None of the other parties did so. Nonetheless, the trial court proceeded with a bench trial on May 13, 2003. The record on appeal does not contain a transcript of this bench trial.
On June 19, 2003, in a separate written order bearing case number 182 only (“the June 19 order”), the trial court found, on the basis of unidentified evidence it had received at the May 13, 2003, trial, that a division in kind of the property was impracticable and that a sale for division was necessary. Pursuant to § 35-6-101, Ala. Code 1975, the June 19 order appointed an appraiser to appraise the property and directed the appraiser to file his appraisal with the trial court within 30 days. The June 19 order further found that the Daughtrey claimants were the only parties who had filed a notice of intent to purchase the property in accordance with § 35-6-100, Ala.Code 1975, and, therefore, were the only parties entitled 'to purchase the property.
The appraiser filed his appraisal with the trial court on July 17, 2003. He appraised the value of the property at $84,000. On August 19, 2003, in a separate written order bearing case number 256 only, the trial court set a hearing for October 23, 2003, to confirm the private sale of the property.
On October 21, 2003, the Mitchell claimants, in a motion bearing case number 182 only, moved the trial court to set aside the June 19 order. In that motion, the Mitchell claimants’ attorney stated that neither he nor his clients appeared for the trial in case number 256 on May 13; 2003, because, due to a miscommunication with ■ the Daughtrey claimants’ attorney, he'believed that the trial set on that date would be continued. In a subsequent filing in support of this motion, the Mitchell claimants submitted evidence tending to prove that Maybon Daughtrey did not own an interest in the property. The Daughtrey claimants, in a pleading bearing both case number 182 and case number-256, objected to the Mitchell claimants’ motion to set aside the June 19 order.
■ On November 24, 2003, Michael R. White, in a motion bearing Case number 256 only, moved the trial court to set aside the private sale of the property on the ground that he should have been allowed to participate in the private sale of the property because he gave timely notice of his interest in purchasing it. The' record does not reflect when the private sale actually occurred. A report of the private sale (“the report”) was not filed with the court until December 9, 2003. The report bore both case number 182 and case number 256. The report indicates that Maybon Daughtrey purchased the property for $57,000.01 ($84,000 minus the $26,999.99 *344 value of the interests in the property claimed by Maybon Daughtrey and his wife, Martha Daughtrey). The report also listed the fractional ownership interests of the persons who owned an interest in the property.[2] In addition, the report listed the amount of the net sales proceeds that each of the nonpurchasing parties should receive on the basis of those fractional interests. It proposed that a total of $10,431.70 be distributed to the eight Mitchell claimants for their interests in the property.
On June 24, 2004, in a separate written order bearing case number 256 only (“the June 24 order”), the trial court denied the Mitchell claimants’ motion to set aside the June 19 order and granted Michael R. White’s motion to set aside the private sale. The June 24 order granted Michael R. White 30 days to participate in the private sale of the property. On August 3, 2004, the trial court entered an order directing that, because both Maybon Daugh-trey and Michael R. White had paid into court the appraised value of the property less the appraised value of their respective interests in the property, a private auction should be held on September 21, 2004, in which Maybon Daughtrey and Michael R. White would bid on the property. This order bore both case number 182 and case number 256.
On October 12, 2004, an amended report of private sale (“the amended report”) was filed with the trial court. The amended report bore both case number 182 and case number 256. The amended report indicated that Maybon Daughtrey had purchased 80 acres of the property for $41,769.77 and that Michael R. White had purchased 40 acres of the property for $26,000. The amended report, like its predecessor, listed the fractional ownership interests of the persons who owned an interest in the property.[3] The amended report, like its predecessor, also proposed the amounts of the net sales proceeds that should be distributed to the nonpurchasing parties for their interests in the property. The amended report proposed that a total of $10,324.56 be distributed to the eight Mitchell claimants for their interests in the property.
On October 18, 2004, in a separate written order bearing both case number 182 and ease number 256, the trial court approved the private sale reported in the amended report; ordered the conveyance of 80 acres of the property to Maybon Daughtrey and his wife, Martha Daugh-trey; ordered the conveyance of 40 acres of the property to Michael R. White; ordered the payment of expenses from the proceeds of the private sale; and ordered the distribution of the net proceeds to the nonpurchasing parties in accordance with the amended report.
On November 29, 2004, the Mitchell claimants filed a notice of appeal to the supreme court. The notice of appeal, which bore case number 256 only, designated the October 18, 2004, final judgment, which bore both case number 182 and case number 256, as the judgment being appealed. Pursuant to § 12-2-7(6), Ala. Code 1975, the supreme court transferred the appeal to this court on December 27, 2004.
Maybon Daughtrey and Michael R. White, the two purchasers of the property in the private sale authorized and ap *345 proved by the trial court, have moved this court to dismiss the Mitchell claimants’ appeal on the ground that their notice of appeal was tardy. Specifically, Maybon Daughtrey and Michael R. White argue that the June 24 order, which denied the Mitchell claimants’ motion to set aside the June 19 order, was a final judgment and that, therefore, the Mitchell claimants’ notice of appeal was not filed within 42 days after the entry of that final judgment.[4] Although the supreme court has stated that, in equity actions brought to sell lands for division, the order directing that the lands be sold will support an appeal, Sexton v. Sexton, 280 Ala. 479, 482, 195 So.2d 531, 533 (1967), it has held that the appellate courts may entertain issues pertaining to such an order in a timely appeal from the subsequent order confirming the sale, even if the notice of appeal is filed more than 42 days after the entry of the order directing that the lands be sold. Jetton v. Jetton, 502 So.2d 756, 759 (Ala.1987). Therefore, we deny the motion of Maybon Daughtrey and Michael R. White to dismiss the appeal.
On appeal, the Mitchell claimants, citing Cedars-Sinai Medical Center v. Revlon, Inc., 111 F.R.D. 24 (D.Del.1986), argue that the trial court erred in conducting a separate bench trial in case number 256 before it conducted a jury trial in case number 182. We agree.
In Cedars-Sinai, the plaintiff filed two separate actions alleging patent infringement in federal court in Delaware. In the first action, the plaintiff sued Revlon, Inc., and Armour Pharmaceutical Company, alleging infringement of its patent relating to a method of eliminating hepatitis-carrying microorganisms from a “freeze-dried” blood-clotting agent through heat treatment. The plaintiff did not demand a jury trial in that first action.
In the second action, the plaintiff sued Rorer Group, Inc., and Pantry Pride, Inc., as well as Revlon and Armour, alleging infringement of another closely related patent. The plaintiff demanded a jury trial in the second action.
The plaintiff moved the federal court to grant it a jury trial in the first action or, in the alternative, to consolidate the two actions for a joint trial before a jury. The federal court denied the plaintiffs motion to grant it a jury trial in the first action because the plaintiff had not made a timely demand for a jury trial as required by the federal rules of civil procedure. However, the federal court granted the plaintiffs motion to consolidate the cases for a joint trial before a jury and explained:
“This litigation presents an unusual set of circumstances. If the Court holds fast to its initial determination that there should be no jury trial in [the first action], then — whether or not the two cases are ultimately consolidated for purposes of a joint trial — two different triers of fact will be engaged in deciding, at least to some extent, common issues of fact and in applying common rules of law. The defendants dispute the degree of commonality between the two cases, conceding however, that some of the issues do share a common factual and legal foundation. The defendants also raise the fear of jury confusion. Most significant is the direct conflict with the plaintiffs Seventh Amendment right to a jury trial which separate jury and non-jury trials would create. Ultimately, this conflict convinces the Court that the cases should be consolidated *346 and that the plaintiff should be granted a joint jury trial in both cases.
“The federal courts have vigilantly safeguarded the constitutional right of a litigant to have a single jury decide factual questions common to separate cases. The Seventh Amendment to the United States Constitution provides:
“ ‘In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.’
“U.S. Const. Art. VII.
“The prohibition, arising directly from the mandates of the Seventh Amendment, is well-established against having two juries decide the same essential issues. Gasoline Products v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 587 F.Supp. 1112, 1116-17 (D.Del.1984). Here, similar reasoning demonstrates that the plaintiffs Seventh Amendment right is in even more danger of compromise, where some of the factual determinations of the jury relating to [the patent at issue in the second action] would surely be the subject of examination in a non-jury trial by the Court on [the patent at issue in the first action]. Where a jury is the trier of fact on common issues of fact, it should be the sole determiner of those issues. Only consolidation, before a single jury, at least on the issues of validity, enforceability, and infringement, would protect the plaintiffs constitutional rights in this litigation.
“Even according the fullest possible weight to the defendants’ argument that the two cases contain quite different questions of law and fact, it is undisputed that some, even a substantial, number of the issues are common to the two cases. ...
[[Image here]]
“Furthermore, the high probability of collateral estoppel in this case, at least on the issues of validity, infringement, and enforceability, favors consolidation of the two cases before a single jury. A court must make every effort to ensure that a party’s right to trial by jury is not weakened or eliminated altogether by a prior determination of common issues in a non-jury trial, by collateral estoppel. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-73, 82 S.Ct. 894, 896-97, 8 L.Ed.2d 44 (1962); Beacon Theatres v. Westover, 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959). Under the doctrine of collateral estop-pel, a decision by a court on an issue of fact or law that was necessary to the judgment may preclude relitigation of that issue in a suit on a different cause of action involving a party to the first case. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The doctrine applies when: (1) the issue decided in the prior litigation is identical to the issue here; (2) the prior litigation resulted in a final judgment on the merits; (3) the party against whom the estoppel is asserted is a party, or in privity with a party, to the prior proceeding; and (4) that party had a full and fair opportunity to present the claim in the prior proceeding. Scooper Dooper, Inc. v. Kraftco Corp., 494 F.2d 840, 844 (3d Cir.1974); Amalgamated Cotton Garment v. J.B.C. Co. of Madera, Inc., 608 F.Supp. 158, 162-63 (W.D.Pa.1984). The fact that here the same parties are litigants in both actions with common *347 issues of law and fact demonstrates that collateral estoppel would apply.
“A possible alternative, of course, would be to try [the second action] first, where the jury trial is of right, then have the Court try [the first action]. Although estoppel would occur, it would not directly infringe on the plaintiffs constitutional right to a jury trial. However, when one of the cases is a jury trial, and common issues of law and fact exist, a single jury should be the same trier of fact. Gasoline Products, 283 U.S. at 500, 51 S.Ct. at 515.”
111 F.R.D. at 32-33 (footnote omitted; some emphasis original; some emphasis added).
Article I, § 11 of the Alabama Constitution of 1901 provides “[t]hat the right of trial by jury shall remain inviolate.” In Eason v. Bynon, 781 So.2d 238, 241 (Ala.Civ.App.2000), this court stated:
“ ‘The holding in Beacon Theatres[, Inc. v. Westover, 359 U.S. 500, 510-11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959),] was that where both legal and equitable issues are presented in a single case, “only under the most imperative circumstances, ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.” That holding, of course, applies whether the trial judge chooses to characterize the legal issue presented as “incidental” to equitable issues or not.’
“Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Although Dairy Queen, Inc. v. Wood construed the Seventh Amendment to the United States Constitution, Alabama cases have held that the Seventh Amendment is not materially different from Article I, §11 of the Alabama Constitution. See, e.g., Poston v. Gaddis, 335 So.2d 165 (Ala.Civ.App.), cert. denied, 335 So.2d 169 (Ala.1976). Both constitutional provisions preserve the right to jury trial as it existed at common law when the provisions were ratified. Id.”
(Emphasis added.)
In the case now before us, both the Mitchell claimants’ claims and the Daugh-trey claimants’ claims involved a common fact question, i.e., who owned the property.[5] Indeed, the Daughtrey claimants themselves had moved the trial court to consolidate case number 182 and case number 256 “in order to determine the degree of ownership of each party” on the ground that “the two cases involve the same parties and the same parcel of real property.” The trial court granted the Daughtrey claimants’ motions to consolidate without qualification. Yet, the trial court, acting ex mero motu, subsequently set case number 256 for a separate bench trial and denied the Mitchell claimants’ motion to consolidate insofar as it sought to consolidate case number 182 and case number 256 for a joint jury trial. By setting case number 256 for a separate bench trial, denying the Mitchell claimants’ motion to consolidate the cases insofar as it sought to consolidate the cases for a joint jury trial, and proceeding with the separate bench trial in case number 256 before the jury trial in case number 182, the trial court failed to “make every effort to ensure that a party’s right to trial by jury is not weakened or eliminated alto *348 gether by a prior determination of common issues in a non-jury trial, by collateral estoppel.” Cedars-Sinai, 111 F.R.D. at 33. Consequently, we reverse the final October 18, 2004, judgment approving the private sale, which bore both case number 182 and case number 256; the June 19 order directing that the property be sold for division, which bore case number 182 only; and the June 24 order denying the Mitchell claimants’ motion to set aside the June 19 order, which bore case number 256 only. We remand the case and direct the trial court, on remand, to consolidate ease number 182 and case number 256 for a jury trial on the issue of ownership of the property.
APPLICATION FOR REHEARING GRANTED; OPINION OF JULY 22, 2005, WITHDRAWN; OPINION SUBSTITUTED; MOTION TO DISMISS DENIED; REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and MURDOCK, J., concur.
PITTMAN, J., concurs in the result, with writing.
THOMPSON, J., dissents, without writing.

. The seven Mitchell claimants who were not identified by name as defendants in the Daughtrey claimants’ complaint for division did not contest the propriety of the service upon them by publication.

. Presumably, those fractional ownership interests were based on the evidence introduced at the May 13, 2003, bench trial in case number 256; however, the record is silent on that point.

. See note 2.

. The June 24 order denying the Mitchell claimants’ motion to set aside the June 19 order bore case number 256 only. The June 19 order directing that the property be sold for division bore case number 182 only.

. Although the Mitchell claimants did not raise the issue either in the trial court or before this court, Maybon Daughtrey's and Grady Gould's claims for division were compulsory counterclaims in case number 182 and should not have been included in a separate action. See Rule 13(a), Ala. R. Civ. P., and Brooks v. Peoples Nat’l Bank of Huntsville, 414 So.2d 917, 919 (Ala.1982).